No. 22-1894

# United States Court of Appeals
# for the Federal Circuit

### MASIMO CORPORATION,

*Appellant,*

*v.*

### APPLE INC.,

*Appellee.*

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE,
PATENT TRIAL AND APPEAL BOARD IN NO. IPR2020-01526

### APPLE INC.'S RESPONSE BRIEF

Lauren A. Degnan
W. Karl Renner
Michael J. Ballanco
Laura E. Powell
FISH & RICHARDSON P.C.
1000 Maine Ave., Suite 1000
Washington, DC 20024
Tel: (202) 783-5070
degnan@fr.com

Robert Courtney
FISH & RICHARDSON P.C.
60 South 6th Street
Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070

February 1, 2023

*Attorneys for Appellee Apple Inc.*

**Claim 15 of U.S. Patent No. 6,771,994 (Appx114-134)**

15. A sensor which generates at least first and second intensity signals from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood; the sensor comprising:

at least one light emission device;

a light sensitive detector; and

a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient.

# CERTIFICATE OF INTEREST

Counsel for Appellee Apple Inc. ("Apple") certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case.

   **Apple Inc.**

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **Apple Inc.**

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **None**

4. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **Fish & Richardson P.C.: Andrew B. Patrick, Daniel D. Smith, Vivian Lu (no longer at firm)**

5. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

   ***Masimo Corporation, et al. v. Apple Inc.,***
        **Case No. 8:20-cv-00048 (C.D. Cal.)**

   ***Masimo Corporation v. Apple Inc.,***
        **Case No. 22-1895 (Fed. Cir.)**

6.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

    **None/Not Applicable**

Dated:  February 1, 2023          */s/ Lauren A. Degnan*
                                  Lauren A. Degnan

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF AUTHORITIES ............................................................... vi

STATEMENT OF RELATED CASES ................................................. ix

RESPONSIVE STATEMENT OF THE ISSUES .................................. x

INTRODUCTION ............................................................................... 1

COUNTER-STATEMENT OF CASE AND FACTS ............................. 2

I.     PULSE OXIMETERS, FIRST INTRODUCED IN THE
       EARLY '80S ...........................................................................2

II.    CLAIM 15 OF MASIMO'S '994 PATENT .................................3

III.   APPLE'S PETITION AND THE PRIOR ART .............................5

       A.     "Webster": J.G. Webster, *Design of Pulse Oximeters*
              (1997) .........................................................................5

       B.     "Melby": U.S. Patent 5,254,388 (issued October 1993 to
              J. Melby *et al.*)............................................................7

       C.     Webster and Melby Combination .........................................9

IV.    THE BOARD'S DECISION .......................................................10

SUMMARY OF THE ARGUMENT ................................................. 12

ARGUMENT ................................................................................... 14

I.     STANDARD OF REVIEW.......................................................14

II.    THE BOARD APPLIED THE PROPER LEGAL STANDARD.................15

       A.     Obviousness Doctrine Expressly Permits the Board To
              Consider How Multiple References Might Direct a
              Skilled Artisan to the Requirements of Each Disputed
              Limitation, and There Is No Requirement that a Single
              Reference Teach Any Particular Limitation .......................16

B.    The Board Considered the Prior Art as a Whole.................................20

    1.    Prior Art Is To Be Relied Upon for All It Teaches..................20

    2.    Masimo's Cited Cases Do Not Require the Board
       To Limit Webster to Its Exemplary Filter ...............................23

C.    The Board's Motivation To Combine Analysis Is Legally
    Sound.................................................................................................26

III.    SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S
    OBVIOUSNESS FINDING BASED ON WEBSTER AND
    MELBY ......................................................................................................29

A.    Substantial Evidence Supports the Board's Finding that
    Webster and Melby Suggest Placing Louvers Over a
    Photodetector.....................................................................................30

    1.    Substantial Evidence Supports the Board's Finding
       that the Louver Limitation Exists in Webster-
       Melby Combination ................................................................. 31

    2.    The Board Did Not Misuse the Skilled Artisan's
       Ordinary Creativity ................................................................. 33

B.    The Board Correctly Determined that a Skilled Artisan
    Would Have Been Motivated To Combine Melby's
    Louvered Film with Webster's Pulse Oximeter System....................35

    1.    Substantial Evidence Supports the Board's
       Findings Relating to Melby's Louvered Film and
       Its Effect on Ambient Light ..................................................... 35

       a.    Melby's Louvered Film Minimizes the
          Effect of Ambient Light ................................................. 35

       b.    A Skilled Artisan Would Have Placed
          Melby's Film Over Webster's Photodetector
          To Minimize Ambient Light.......................................... 41

          i.    The Court Should Reject Masimo's
             Analogous Art Argument ..................................... 41

            ii.    The Board Properly Credited Dr. Anthony's Testimony over Masimo's Expert's ................................................ 43

      2.    Substantial Evidence Supports the Board's Findings Regarding Use of Melby's Filter with Webster's Photodetectors .......................................... 45

            a.    Webster Is Not Limited to Wavelength Filters ........................................................... 45

            b.    Webster Teaches the Use of Filters To Reduce Ambient Light ................................... 49

      3.    Webster and Melby's Teachings Work Together To Produce an Obvious Variant ............................... 53

IV.    MASIMO PRESENTED NO OBJECTIVE EVIDENCE OF NONOBVIOUSNESS TO THE BOARD .................................... 55

V.    IF NOT AFFIRMED, THE CASE NEEDS TO BE REMANDED FOR THE BOARD TO ANALYZE APPLE'S REMAINING GROUNDS .......................................... 56

CONCLUSION ................................................. 57

CERTIFICATE OF SERVICE AND FILING ...................... 58

CERTIFICATE OF COMPLIANCE ............................... 59

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
  949 F.3d 1366 (Fed. Cir. 2020) ...........................................................43

*Am. Nat'l Mfg. Inc. v. Sleep No. Corp.*,
  52 F.4th 1371 (Fed. Cir. 2022) ...........................................................28

*Belden Inc. v. Berk-Tek LLC*,
  805 F.3d 1064 (Fed. Cir. 2015) .....................................................20, 21

*Bradium Techs. LLC v. Iancu*,
  923 F.3d 1032 (Fed. Cir. 2019) ....................................................20, 32

*Cameron Int'l Corp. v. Nitro Fluids, L.L.C.*,
  No. 2021-1183, 2022 WL 636099 (Fed. Cir. Mar. 4, 2022) .............48

*In re Clay*,
  966 F.2d 656 (Fed. Cir. 1992) ..............................................................42

*Cleo Inc. v. United States*,
  501 F.3d 1291 (Fed. Cir. 2007) ...........................................................30

*Cohesive Techs., Inc. v. Waters Corp.*,
  543 F.3d 1351 (Fed. Cir. 2008) ...........................................................16

*Donner Tech., LLC v. Pro Stage Gear, LLC*,
  979 F.3d 1353 (Fed. Cir. 2020) ...........................................................42

*DSS Tech. Mgmt., Inc. v. Apple Inc.*,
  885 F.3d 1367 (Fed. Cir. 2018) .............................................33, 34, 39

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*,
  8 F.4th 1331 (Fed. Cir. 2021) .......................................46, 47, 48, 52

*In re Enhanced Security Research, LLC*,
  739 F.3d 1347 (Fed. Cir. 2014) ...........................................................24

*Fleming v. Cirrus Design Corp.*,
   28 F.4th 1214 (Fed. Cir. 2022) .....................................................17, 32

*Game & Tech. Co. v. Wargaming Grp. Ltd.*,
   942 F.3d 1343 (Fed. Cir. 2019) .......................................16, 17, 32, 35

*Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*,
   655 F.3d 1291 (Fed. Cir. 2011) ............................................................23

*Henny Penny Corp. v. Frymaster LLC*,
   938 F.3d 1324 (Fed. Cir. 2019) ....................................................23, 24

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
   849 F.3d 1034 (Fed. Cir. 2017) ............................................................44

*Intel Corp. v. Qualcomm Inc.*,
   21 F.4th 784 (Fed. Cir. 2021) .......................................................40, 44

*IXI IP, LLC v. Samsung Electronics Co.*,
   903 F.3d 1257 (Fed. Cir. 2018) .....................................................25, 26

*In re Kahn*,
   441 F.3d 977 (Fed. Cir. 2006) ..............................................................24

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007).................................................................*passim*

*Medichem, S.A. v. Rolabo, S.L.*,
   437 F.3d 1157 (Fed. Cir. 2006) .....................................................44, 55

*Mobility Workx, LLC v. Unified Patents, LLC*,
   15 F.4th 1146 (Fed. Cir. 2021) ............................................................56

*Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*,
   878 F.3d 1336 (Fed. Cir. 2018) .............................................14, 15, 30

*In re Mouttet*,
   686 F.3d 1322 (Fed. Cir. 2012) ....................................................40, 54

*Novartis AG v. Torrent Pharms. Ltd.*,
   853 F.3d 1316 (Fed. Cir. 2017) ............................................................41

*Outdry Techs. Corp. v. Geox S.p.A.*,
   859 F.3d 1364 (Fed. Cir. 2017) ........................................................... 14

*Panduit Corp. v. Dennison Manufacturing Co.*,
   810 F.2d 1561 (Fed. Cir. 1987) .................................................... 23, 24

*Pearson v. Dep't of Veterans Affs.*,
   465 F. App'x 925 (Fed. Cir. 2011) ..................................................... 15

*PGS Geophysical AS v. Iancu*,
   891 F.3d 1354 (Fed. Cir. 2018) ......................................................... 28

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
   655 F.3d 1364 (Fed. Cir. 2011) ......................................................... 19

*In re Urbanski*,
   809 F.3d 1237 (Fed. Cir. 2016) ......................................................... 44

*In re Warsaw Orthopedic, Inc.*,
   832 F.3d 1327 (Fed. Cir. 2016) .................................................... 14, 22

*Wilson v. Martin*,
   789 F. App'x 861 (Fed. Cir. 2019) .................................................... 29

## <u>STATEMENT OF RELATED CASES</u>

Per Federal Circuit Rule 47.5(a), Apple states that no other appeals from this proceeding have previously been before this or any other appellate court.

Per Federal Circuit Rule 47.5(b), Apple is aware of the following pending case that may directly affect or be directly affected by this Court's decision in the pending appeal as it also concerns the same patent:

- *Masimo Corporation v. Apple Inc.*, Civil Action No. 8:20-cv-00048 (C.D. Cal.) (filed Jan. 9, 2020).

## **RESPONSIVE STATEMENT OF THE ISSUES**

1.      Whether the Board properly applied obviousness law by: (1) considering multiple teachings across several prior art references in combination; (2) making findings about what a skilled artisan "would" have been motivated to do in response to the teachings of the prior art; and (3) supporting its finding of a motivation to combine based, in part, based on the references' explicit teaching and expert testimony examining those references;

2.      Whether substantial evidence supports the Board's finding that the Webster and Melby references, taken in combination, suggest placing louvers over a photodetector; and

3.      Whether substantial evidence supports the Board's finding, based on explicit disclosure in the references and expert testimony, that a skilled artisan would have been motivated to combine Melby's louvered film with Webster's pulse oximeter.

# **INTRODUCTION**

The Board's determination that the challenged claims of U.S. Patent No. 6,771,994 ("'994 patent") are obvious in view of Webster and Melby is sound as both a legal and factual matter. The only limitation at issue on appeal requires that louvers be placed over a photodetector in a pulse oximeter. Webster teaches pulse oximeters in which light filters are placed atop the photodetector to minimize the detrimental effect that ambient light has on the device. Melby teaches a specific type of light filter—namely a louvered film—that also is used to avoid the impact of unwanted light on an optical system. A combination using Melby's film as Webster's light filter presents a prototypical case of obviousness, as the Board correctly recognized.

Masimo's appeal seeks to call into question the Board's legal analysis and its factual findings, but the Board's approach was sound as to both. As for the law, Masimo is wrong that the Board adopted an incorrect mode of analysis. The Board considered the prior art as a whole and concluded that a skilled artisan would have been motivated to combine Webster and Melby without relying on hindsight.

As for the facts, Masimo's appeal seeks a wholesale substitution of nearly, if not all, of the Board's well-supported factual findings regarding the content of Webster and Melby and the motivation a skilled artisan would have in combining them. Each and every one of the Board's factual findings has ample—and

1

certainly substantial—evidentiary support in the record. For these reasons, the Board's decision should be affirmed.

## COUNTER-STATEMENT OF CASE AND FACTS

## I. PULSE OXIMETERS, FIRST INTRODUCED IN THE EARLY '80S

Pulse oximeters are devices that non-invasively measure the amount of oxygen (i.e., the "oxygen saturation") in arterial blood, which is the blood traveling from the heart towards the body's other tissues, as well as to measure the heart's pulse rate. *See* Appx11. Developed in the early 1980s, pulse oximeters work by measuring the transmission of light passing through some accessible body tissue, such as a finger. Appx11-13. Arterial blood has different light absorption characteristics from other body tissues (e.g., venous blood, skin, fat), and some of those characteristics vary with oxygen saturation. *See, e.g.*, Appx917. For decades, pulse oximeters have used well-known mathematical tools to draw conclusions about oxygen saturation and pulse rate by shining light at two wavelengths (e.g., from two specially chosen LEDs) through a patient's fingertip or earlobe, positioning a detector so that it receives the transmitted light, and analyzing the detector's signal. The Board's Decision depicts a standard pulse oximeter configuration, taken from the prior art:



Appx12 (depicting figure from Appx958).

This appeal is from IPR of claim 15 of Masimo's patent (No. 6,771,994 ("the '994 patent," Appx114-134)), which relates to pulse oximetry and which issued more than twenty years after the basic design of the pulse oximeter had been established. The Board determined that claim 15 is unpatentable as obvious. That determination was correct, and Apple respectfully submits that the Court should affirm.

## II.    CLAIM 15 OF MASIMO'S '994 PATENT

As even Masimo concedes, many of claim 15's requirements were present in pulse oximeters long before the alleged invention. Claim 15 requires, for example, a light emitter and a light detector. Appx133 (8:27-28). It requires detecting light in at least two wavelengths after passing through body tissue. *Id.* (8:22-24). And it requires that the tissue in question carry "pulsing" (i.e., arterial) blood. *Id.* (8:34). All of these have been standard features of pulse oximetry systems since their inception.

3

To the extent it has one, Masimo's argument for patentability extends from claim 15's recitation of "a plurality of louvers positioned over the light sensitive detector." *Id.* (8:29-30) ("louver limitation"). According to the '994 patent, such louvers "block light rays travelling along an oblique path 410 (i.e., light that does not originate from in front of the detector assembly 235)." Appx132 (6:24-41). By blocking light travelling along an oblique path, or at an angle, from reaching the detector, the patent states that the louvers prevent inaccurate reads that can occur when rays of light travelling along the oblique path "generate an AC signal that could be interpreted by the pulse oximeter 140 as a physiological signal" even though the probe is not attached properly. *Id.*; Appx131 (4:35-45). The louvers are, "[i]n a preferred embodiment . . . created from commercially available '3M Light Control Film.'" Appx132 (6:39-41). Figure 5B of the '994 patent illustrates these "louvers." Appx127. The image below includes annotations by Apple, submitted to the Board so as to better illustrate the patent's teachings.



Appx146 (annotating Appx127 (Fig. 5B)).

## III.    APPLE'S PETITION AND THE PRIOR ART

Following a petition by Apple, the Board found claim 15 unpatentable as obvious.  Appx35.  The IPR decision describes in detail Apple's proof that a skilled artisan would have viewed claim 15's oximetry system as obvious in view of two prior art references, "Webster" and "Melby," each discussed below.

### A.    "Webster": J.G. Webster, *Design of Pulse Oximeters* (1997)

Webster is a 1997 book that provides an overview of the history and design of pulse oximeters.  Appx855.  As the Board recognized, "Webster provides a comprehensive summary of the state of the art as of 1997, and also describes the purpose of components of a pulse oximeter as well as the design process and selection criteria for particular components."  Appx12 (citing Appx884-891; Appx927-968).

5

Indeed, the pulse oximeter schematic depicted in the Board's opinion is from

Webster, and depicts light from two LEDs alternately passing through a finger's

tissue before being detected by a photodiode:



Appx958.

Importantly for this appeal, Webster notes that ambient light presents a

challenge for any pulse oximeter.  After all, light from the LEDs would likely be

"partially reflected, transmitted, absorbed, and scattered by the skin and other

tissues and the blood before it reaches the detector."  Appx957.  As a result, the

detector must be able to detect even relatively small amounts of light coming from

the emitters—a task greatly complicated if ambient light is also striking the

detector.  In Webster's words, a critical goal of pulse oximeter design was that the

assembly "**_must be protected from the ambient light_** for the wavelengths to which

the photodiode is sensitive."  *Id.*; Appx950.[1]

---

[1] All emphasis is added unless noted otherwise.

6

Webster not only identifies the problem, it also notes a class of solutions in then-existing oximeters to "minimize the effects from light other than the optical signals of interest." Appx950. One class of solutions, according to Webster, was "to ***place some type of light filter over the detector***." Appx950. Alternately, Webster states that another way "to limit the light reaching the photodiode to that which has traveled through tissue containing arterial blood . . . is to decrease the angle of incidence to the photodiode." Appx950.

### B.    "Melby": U.S. Patent 5,254,388
### (issued October 1993 to J. Melby *et al.*)

Melby discloses a light control film, or a "louvered plastic film." Appx814 at [57]. This was a multi-layer plastic film in which "clear regions [were] separated by louvers." Appx818 (3:1-8). As shown in the figures below, light shining from below (ray 22 in the lower figure) can pass through clear layer 12, but not through louver 14, which is darkened with carbon black or a similar agent:



*Fig. 1*

*Fig. 2*

Appx815. According to Melby, a film containing these "louvers" 14 would control the amount of light passing through the film according to the light's "angle of incidence." *See* Appx818 (4:11-25). For light approaching from the side, the light would be reflected or refracted by the louver, while the film would "provide only very slightly reduced on-axis transmission[.]" *Id.*; *see also id.* (4:42-47). Melby contemplates using such louvered film for privacy screens on computers (Appx819 (5:37-55)), or "as a sunscreen in the rear window of an automobile" (Appx818 (4:66-68)), but teaches that the film is "useful in a wide variety of applications" (Appx819 (5:8-12)).

8

### C.    Webster and Melby Combination

Apple's petition describes how a person of ordinary skill, reviewing the Webster and Melby references, would have viewed it as obvious to combine them in such a way as to practice claim 15.  Specifically, a skilled artisan "would have been motivated by Melby to include a light control film in the sensor described by Webster" because "a [person of ordinary skill in the art] viewing the disclosure of Webster would have recognized that Melby's film could be used in the Webster device as the 'light filter' to control light such that only light originating from the direction of the light emitters reaches the detector."  Appx181.

Apple also presented testimony by Brian W. Anthony, Ph.D., an MIT research scientist, who explained claim 15's obviousness over the Webster and Melby combination.  Appx653-660 (¶¶92-105).  Dr. Anthony described how a skilled artisan "would have been motivated by Melby to include a light control film in the sensor described by Webster."  Appx658 (¶101).  "In the combination, one of ordinary skill would have understood the light control film to restrict the amount of light that reaches the detector from a particular direction, and therefore that the louvers accept the light when the sensor is properly applied to the patient's body."  Appx659-660 (¶104).  Dr. Anthony illustrated this combination, showing Webster modified with the louvered light control film from Melby:

9



Appx658-659 (¶102).

## IV.    THE BOARD'S DECISION

The Board agreed with Apple and found claim 15 obvious in view of Webster and Melby.  Appx17-34.  After summarizing the parties' respective arguments, the Board began its analysis by explaining that Apple had "persuasively shown that the combination of Webster and Melby teach these limitations and that the combination would have been both predictable and supported by the references."  Appx29.

The Board supported this conclusion with a number of specific factual findings.  Among these findings, the Board found:

> We determine that Petitioner has persuasively shown that Webster teaches the importance of minimizing the effects of light other than the optical signals of interest, including unwanted light incident upon the detector, by placing some type of light filter over the detector. Petitioner demonstrates that at least one embodiment of Webster contemplates that one type of "unwanted light" to be minimized is "ambient light," which is the type of light the light control film of Melby is designed to minimize.

Appx29-30 (internal citations omitted); *see also* Appx33-34.

In making this finding, the Board adopted Apple's recitation of the Webster-Melby combination, as articulated by Dr. Anthony. Appx 30-31. The Board incorporated Dr. Anthony's modified version of Webster's Figure 7.1 showing the combination reproduced in the previous section, in which Melby's film is placed atop Webster's photodiode. Appx 30 (citing Appx658-659 (¶102)). The Board credited Dr. Anthony's testimony supporting this combination, finding that "Dr. Anthony persuasively testifies that Melby's light control film placed above Webster's photodiode would reduce noise by accepting light from the light emission device from a particular direction based on the angle of the louvers within the light control film" and that "[t]his would in turn help minimize light that has not otherwise travelled through the finger." Appx31 (citing Appx658-660 (¶¶102-104)).

The Board further found in conclusion that:

> Dr. Anthony persuasively testifies that one of ordinary skill would have been motivated to combine Webster and Melby to provide a pulse oximeter that minimizes errors by limiting the light reaching the photodiode to that which has travelled through tissue containing arterial blood. . . . We find Dr. Anthony's reasoning persuasive that the pulse oximeter resulting from the proposed combination of Webster and Melby would have been a solution contemplated by Webster and the combination would have been obvious to a person of ordinary skill in the art.

Appx33 (citing Appx657-660 (¶¶100-104)).

11

In reaching this conclusion, the Board considered and rejected many of the arguments Masimo now advances on appeal.  Appx29-34.  For example, the Board rejected the argument that the filter described in Webster is limited to a wavelength filter and found to the contrary.  *See* Appx32.  Specifically, the Board found that Masimo's contentions "are based on an overly narrow reading of the combination of references and ignore other likely embodiments" and that "Webster teaches that in one embodiment light filters, such as those found in Melby, could be used above the detectors."  Appx32.

The Board also found, contrary to Masimo's argument on appeal, that Webster's disclosed filter is used to block ambient light, and that Melby's light control film could be such a filter.  Appx32.  Citing to Melby, the Board particularly found that "Melby teaches a louvered plastic film that collimates light and reduces the influence of ambient light," Appx32 (citing Appx818 (3:63-4:25)), and that "Webster is clear that to minimize unwanted light upon the detector, one could 'place some type of light filter *over* the detector.'"  *Id.* (quoting Appx950).

This appeal followed.

## <u>SUMMARY OF THE ARGUMENT</u>

The Board's decision rendering claim 15 of the '994 patent obvious in view of Webster and Melby is sound.  Masimo's arguments to the contrary fail to present a legitimate basis for displacing the Board's decision.

*First*, contrary to Masimo's assertions, the Board did not apply an incorrect legal standard. Masimo's argument that neither Webster nor Melby *alone* discloses the louver limitation wrongly faults the Board for applying the law of obviousness rather than anticipation. Furthermore, the Board correctly examined the prior art references "as a whole" by recognizing all the teachings present in the prior art, including Webster's broad teaching that light filters may be placed atop photodetectors to lessen the effect ambient light. Masimo's argument that the Board was required to read non-limiting embodiments in Webster to restrict Webster's teaching has no foundation in the law. In fact, the Board would have erred by ignoring Webster's general teaching that a filter may be placed over the photodetector.

The Board also conducted an appropriate motivation to combine analysis using the correct legal standard. The Board concluded that a skilled artisan "would" have been motivated to combine Webster and Melby, not only that a skilled artisan "could" do so, and that it would have been reasonable to make the combination. The Board reached this conclusion by analyzing the references themselves and expert testimony and did not apply an improper hindsight-based approach.

*Second*, substantial evidence supports the Board's factual findings underlying its ultimate conclusion of obviousness. Although Masimo attacks a

laundry list of the factual findings that underpin the Board's finding of motivation to combine, each of the findings rests on the teachings of Webster and Melby and the expert testimony examining those references. This evidence satisfies the substantial evidence standard for both the Board's individual findings and its ultimate conclusion of a motivation to combine the references.

The Board's decision should be affirmed. Reversal would be inappropriate, furthermore, because the Board did not address all of the grounds Apple presented in its petition. As a result, if the Court vacates the Board's decision, it must remand the case for the Board to analyze and rule upon Apple's other grounds, which further demonstrate that claim 15 of the '994 patent is obvious.

## ARGUMENT

## I.    STANDARD OF REVIEW

Obviousness is a mixed question of law and fact, with the Board's legal conclusions reviewed de novo and its factual findings for substantial evidence. *See Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1341 (Fed. Cir. 2018). Among the questions of fact underlying obviousness are the scope and content of the prior art, and whether a skilled artisan would have motivation to combine the prior art references. *See Outdry Techs. Corp. v. Geox S.p.A.*, 859 F.3d 1364, 1368 (Fed. Cir. 2017); *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1332 (Fed. Cir. 2016).

Substantial evidence "is a highly deferential standard of review." *Pearson v. Dep't of Veterans Affs.*, 465 F. App'x 925, 928 (Fed. Cir. 2011). It is defined as "something less than the weight of the evidence but more than a mere scintilla of evidence, meaning that it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Monsanto*, 878 F.3d at 1341 (internal quotations omitted). Thus, even "[i]f two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Id.* (internal quotations omitted).

## II.    THE BOARD APPLIED THE PROPER LEGAL STANDARD

The Board applied the proper legal standards in determining that claim 15 of the '994 patent would have been obvious based on the Webster-Melby combination. In so doing, the Board considered explicit teachings in the references holistically to conclude that Webster and Melby, in combination, teach the limitations of claim 15 and that a skilled artisan would have been motivated to combine them.

A.     **Obviousness Doctrine Expressly Permits the Board To Consider How Multiple References Might Direct a Skilled Artisan to the Requirements of Each Disputed Limitation, and There Is No Requirement that a Single Reference Teach Any Particular Limitation**

Masimo seriously errs when it contends that, because neither Webster nor Melby ***alone*** teaches or suggests "a plurality of louvers positioned over the light sensitive detector" (Blue Br. ("BB") 28-30), the Board's obviousness determination must be the product of legal error.[2]  As the Court knows, the entire essence of obviousness doctrine is that courts assess patentability based on not only what single references teach, but also the understandings that ordinary artisans glean by considering multiple references ***together***.  *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008) ("Obviousness can be proven by combining existing prior art references, while anticipation requires all elements of a claim to be disclosed within a single reference.").  Thus, "[t]he question in an obviousness inquiry is whether it would have been obvious to a person of ordinary skill in the art to combine the relevant disclosures of the two references," and not, as Masimo argues, "whether each individual reference discloses all of the necessary elements." *Game & Tech. Co. v. Wargaming Grp. Ltd.*, 942 F.3d 1343, 1352 (Fed. Cir. 2019).  Indeed, this Court has rejected

---

[2] Masimo concedes, as it must, that Melby teaches "louver elements," Appx817-818 (1:9-22, 3:46-62), and Webster teaches placing a light control element (e.g., a "light filter") over a light-sensitive detector, Appx950.

Masimo's narrow view that a single reference must disclose a disputed claim limitation in full.  *See id.*; *see also Fleming v. Cirrus Design Corp.*, 28 F.4th 1214, 1222 (Fed. Cir. 2022) ("That the proposed ***combination*** of James and POH—rather than one of the individual references—discloses the disputed claim limitations does not defeat the Board's conclusion of obviousness." (emphasis in original)).

So far as Apple understands it, Masimo's contention is that a claim limitation cannot, as a matter of law, be "obvious" unless every element of that limitation was either disclosed or suggested within a single reference.  *See* BB 22 ("[N]either Webster nor Melby teaches or suggests louvers above any detector that accept light originating from a general direction of an emitter, much less for a physiological sensor.").  That contention is seriously flawed, as the Board properly recognized.  No authority supports such a cramped interpretation of obviousness law.  As discussed above, the Court has repeatedly stated that the essence of an obviousness inquiry is to assess what multiple references in combination (or, in some cases, a single reference coupled with common sense or other background knowledge) would teach or suggest to a skilled artisan.  *See also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420-22 (2007).  The Board's assessment in this case fully comported with that guidance.

The Board's Decision properly explains how Webster and Melby fit together to establish the obviousness of claim 15's louver limitation.  It describes how (as

discussed above) Webster describes challenges that optical interference from ambient light pose for pulse oximeters, and establishes the usefulness of "light filters," placed over the detector, for addressing that interference. Appx29 ("We determine that [Apple] has persuasively shown that Webster teaches the importance of minimizing the effects of light other than the optical signals of interest . . . by placing some type of light filter over the detector."). The Board reasoned, persuasively, that while Webster does not itself describe the use of louvers, "it would have been reasonable for a person of ordinary skill in the art to look to Melby to provide a light control film to help control ambient light and further to place that film over the photodiode detectors of Webster[.]" Appx30. The Board even adopted a figure, prepared by Dr. Anthony, depicting how this simple, obvious modification to Webster's basic oximeter design would practice the louver limitation:



*Id.* (depicting annotated figure from Appx646).

The Board's obviousness analysis here was so archetypal—straightforward combination of elements from two references, with well-grounded reasoning explaining how the combination would have been obvious to an ordinarily skilled artisan—that Masimo struggles to identify what it thinks the legal error here might actually have been.  Masimo proposes that the Board improperly applied standards of whether the combination would have seemed "reasonable" to an ordinarily skilled artisan instead of whether the combination was "obvious," BB 24, but the record establishes beyond doubt that there was no error in this regard.  The Decision sets out the correct legal standard, Appx9-10, as even Masimo does not dispute.  And in any event, the Decision makes clear that it used the term "reasonable" to mean that "there was an apparent reason to combine the known elements in the fashion claimed by the patent," which is of course *KSR*'s standard.[3] Appx10 (quoting *KSR*, 550 U.S. at 418).  *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364 (Fed. Cir. 2011), on which Masimo relies, is not contrary, as the record here is far more direct and explicit than the "speculative" teachings in that case.  655 F.3d at 1376.

Masimo also intermittently accuses the Board of using a "hindsight" analysis, BB 26, but that attack also lacks merit.  The Board properly explained

---

[3] The Board made this doubly clear by linking its determination that the combination was "reasonable" with a determination that it was also "predictable," which addresses another aspect of *KSR*.  *See* Appx29 ("[Apple] has persuasively shown . . . that a person of ordinary skill in the art would have been motivated to create its proposed combination because the combination would have been both reasonable and predictable to achieve the design goals set forth in Webster.").

how, to a skilled artisan at the time, Webster would have described both the problem (interference from unwanted light sources) and a generalized class of solutions (i.e., using light filters), with Melby filling in the specifics (using louvered films).  Nothing about such analysis demonstrates improper hindsight, nor any other legal error by the Board.  The Court should reject Masimo's suggestion that the Board applied an incorrect obviousness standard in its entirety.

### B.    The Board Considered the Prior Art as a Whole

Masimo's contention that the Board failed to apply this Court's precedent requiring one to consider the prior art as a whole, BB 22-24, is equally meritless. The Board thoroughly assessed the prior art as a whole, including not only Webster's disclosure of an exemplary type of filter (a wavelength light filter), but also Webster's broad and unqualified teaching to use "some type of light filter." Appx950.  Masimo is the one that fails to consider the references' entire teachings.

### 1.    Prior Art Is To Be Relied Upon for All It Teaches

"A reference must be considered for everything it teaches by way of technology and is not limited to the particular invention it is describing and attempting to protect."  *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1076 (Fed. Cir. 2015) (internal quotations omitted); *see also Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1049 (Fed. Cir. 2019) ("[A] reference must be considered not only for what it expressly teaches, but also for what it fairly suggests.").

Here, Webster's disclosure is broad and unqualified: "One way to minimize unwanted light incident upon the detector is to place ***some type of light filter*** over the detector." Appx950. Although Webster goes on to describe a wavelength filter, it does not recast this broad statement about simply "some type" of light filter to limit the types of acceptable filters to only wavelength filters. "Light filter" is plainly a broader concept than wavelength filter. The Board was free to rely upon this disclosure in Webster because a reference may serve as prior art for all that it teaches, not simply the particular embodiment it discloses. *See Belden*, 805 F.3d at 1076. Indeed, had the Board failed to recognize Webster's teaching to use "some type of light filter," that would have been reversible error. *See id.* (reversing finding of nonobviousness that ignored prior art's teachings).

By arguing that the Board failed to consider the prior art as a whole, Masimo suggests that the Board failed to adopt various alleged restrictions that (in Masimo's inaccurate view) might have limited the reach of Webster's wavelength filter statement. BB 23. To the contrary, the Board properly (and correctly) considered the Webster statements cited by Masimo, and the Board explained why it did not find Webster's disclosure of "some type of light filter" to be limited to a wavelength filter: "There is no indication that this 'some type of light filter' should be limited to just wavelength filters, which are certainly provided as one example mechanism for limiting unwanted light." Appx32. The Board thus

21

treated the wavelength disclosure as a non-limiting embodiment of one of the
"some type of light filter" Webster teaches. The Board's finding regarding what
Webster teaches in terms of light filtering is one regarding the scope and content of
the prior art, reviewed for substantial evidence, which exists here. *See Warsaw
Orthopedic*, 832 F.3d at 1332; *see also infra* Arg. Sec.III.B.2.a. That Masimo
disagrees with the Board's analysis does not mean that the Board committed legal
error of any sort.

Further showing the error in Masimo's assertion on appeal that the Board
did not consider Webster "as a whole," the Board provided additional explanation
for why it rejected Masimo's argument that Webster's teaching to use "some type
of light filter" is limited to wavelength filters. Specifically, the Board reasoned
that Webster's subsequent statements concerning wavelength filters further
suggests that Webster's "some type of light filter" is open-ended. Appx32-33.
After explaining that a "number of optical filter types can be used" between
sources of light and the photodiode, Webster identifies an example from the
literature. Appx950. Webster explains, however, that "these external filters do not
appear to be used much in actual pulse oximetry designs." *Id.* Finding this
statement as discouraging the use of wavelength filters, the Board concluded,

logically, that Webster's other broad teaching of "some type of light filter" is not

confined to wavelength filters.  Appx32-33.[4]

The Board thus plainly examined Webster "as a whole" and Masimo simply

disagrees with the Board's factual findings, including its interpretation of the

Webster reference.

### 2.    Masimo's Cited Cases Do Not Require the Board To Limit Webster to Its Exemplary Filter

*Panduit Corp. v. Dennison Manufacturing Co*., 810 F.2d 1561, 1578 (Fed.

Cir. 1987), and its progeny advance the unremarkable proposition that the prior art

must be considered as a whole and should not be parsed selectively.  *See* BB 22

(citing cases).  Importantly, these cases make this observation with regards to

teaching away.  For example, *Panduit* explains that "a prior patent must be

considered in its entirety, i.e., as a ***whole***, ***including portions that would lead away***

***from the invention in suit*** . . . ."  *Panduit* 810 F.2d at 1568; *see also Genetics Inst.,*

*LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1305 (Fed. Cir.

2011) (holding dissent's belief that patent was obvious "selectively parses" prior

art by failing to recognize specific teachings in prior "leading away" from

obviousness).  The *Henny Penny* decision Masimo cites also focuses on teaching

---

[4] Masimo disagrees with the Board factual findings on this point.  BB 24.  Apple addresses the substantial evidence supporting the Board's findings in Argument Section III.B.2.a, *infra*.

away, commenting that when combining references, "[t]he benefits, ***both lost and gained***, should be weighed against one another." *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019) (emphasis in original).[5]

These cases do not hold, and Masimo cites no case that does, that a prior art reference's disclosure of a non-limiting embodiment somehow mandate a finding that the prior art teaches away from any alternative embodiment. Instead, "[a] reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, ***or would be led in a direction divergent from the path that was taken by the applicant***." *In re Kahn*, 441 F.3d 977, 990 (Fed. Cir. 2006) (quoting *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994)); *see also id.* (finding prior art reference "is not limited to the specific invention disclosed"). Webster's mere disclosure of a wavelength filter as an exemplary light filter, without more, does not rise to the level of directing a skilled artisan to take a divergent path from using a louvered structure. The Board was certainly not compelled to conclude from this discussion, which it did consider, Appx32, that Webster teaches away from any embodiment other than the wavelength embodiment.

---

[5] Masimo also cites *In re Enhanced Security Research, LLC*, 739 F.3d 1347, 1355 (Fed. Cir. 2014), but that case simply distinguishes a prior art reference with missing pages from the situation discussed in *Panduit*.

Indeed, this Court has rejected the narrow restriction Masimo seeks to place on the prior art. In *IXI IP, LLC v. Samsung Electronics Co.*, 903 F.3d 1257 (Fed. Cir. 2018), for example, the parties disagreed about whether the prior art reference's disclosure of a "lookup service" had to exist on a laptop computer. *Id.* at 1264. The patentee argued that the prior art reference was so limited because the prior art's only embodiment showed the "lookup service" on a laptop computer. The Board, however, rejected this argument upon review of the reference and expert testimony, concluding that it "d[id] not agree" that the prior art's "disclosure should be read so narrowly" because the embodiment was "merely exemplary." *Id.* The Court affirmed this finding, noting that the prior art reference did not "exclude other implementations," and thus the Board's conclusion was "reasonable and supported by substantial evidence" and the finding of obvious affirmed. *Id.* at 1264-65.

The Board's analysis and reasoning concerning Webster here are consistent with *IXI*. The Board recognized that Webster does not restrict other embodiments, and in fact broadly teaches that "some type of light filter" may be used to prevent unwanted light in photodetectors. Appx32 (citing Appx905). The Board relied upon, and cited, Dr. Anthony's expert opinion as to how a skilled artisan would interpret this disclosure in Webster. *See* Appx29 (citing Appx654-655 (¶¶93-95)). The Board considered Masimo's argument that Webster is limited to a wavelength

25

filter embodiment and explained why it did not find it persuasive.  Appx32-33.

Like in *IXI*, the Board's decision here followed a correct legal framework, is

supported by substantial evidence, and should similarly be affirmed.

### C.     The Board's Motivation To Combine Analysis Is Legally Sound

The Board also committed no legal error in its assessment of a skilled

artisan's motivation for combining Melby and Webster, as Masimo inaccurately

proposes.  BB 24-27.  Reviewing the Board's complete analysis reveals that the

Board applied a traditional, legally correct motivation to combine analysis to

support its finding of obviousness.

Masimo's argument is largely premised on its selective quoting of the

Board's reasoning that a skilled artisan "could" have combined Webster and Melby

and that the combination would have been "reasonable."  BB 24-25.  These

snapshots of the Board's decision give short shrift to the Board's actual analysis.

The Board repeatedly held that not only ***could*** a skilled artisan make the reasonable

combination of Webster and Melby, but further that a skilled artisan ***would*** have

made this combination:

- "Petitioner has persuasively shown, however, that a person of ordinary skill in the art ***would have been motivated*** to create its proposed combination."  Appx29.

- "Dr. Anthony persuasively testifies that one of ordinary skill ***would have been motivated to combine*** Webster and Melby . . . .  We find Dr. Anthony's reasoning persuasive that the pulse oximeter resulting from ***the proposed combination of Webster and Melby***

26

> ***would have been a solution contemplated by Webster*** and the combination ***would have been obvious*** to a person of ordinary skill in the art." Appx33-34.

- "Petitioner has demonstrated by a preponderance of the evidence that a person of ordinary skill in the art ***would have found the combination of Webster and Melby renders obvious*** claim 15." Appx34.

Whether a skilled artisan would have been motivated to combine prior art references is a quintessential obviousness inquiry. The Board recognized as much, correctly reciting in the legal standards section of its decision that, "[w]hen evaluating a combination of teachings, we must also 'determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.'" Appx10 (quoting *KSR*, 550 U.S. at 418). The Board correctly applied this law and concluded that a skilled artisan would have had a reason to combine the louvered film from Melby with Webster's device, as the above quotations demonstrate. Appx29-34; *see also infra* Arg. Sec.III.B (describing the substantial evidence supporting the Board's findings relating to motivation to combine).

The few instances where the Board remarked that a skilled artisan "could have" combined the references and that such a combination would have been "reasonable" does not demonstrate that the Board applied the wrong legal standard, when one considers the Board's decision in its entirety. *See, e.g.*, Appx29-34. Even decisions of "less than ideal clarity" should be upheld "if the agency's path

may reasonably be discerned." *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1365 (Fed. Cir. 2018) (internal quotations omitted). Here, the Board's decision is not unclear regarding motivation to combine. To the extent Masimo argues otherwise, the Board's path to finding obviousness, using the correct legal test, is plainly discernible and thus the decision should be upheld.

Masimo's related assertion—that the Board wrongly placed the burden on Masimo to disprove obviousness—is also without merit. BB 25. The Board considered the prior art and expert testimony, found that there would have been a motivation to combine the references, and addressed and rejected Masimo's counterarguments. *See generally* Appx1-37. Decisions that proceed in this manner are "most fairly read as properly allocating the burden of persuasion." *Am. Nat'l Mfg. Inc. v. Sleep No. Corp.*, 52 F.4th 1371, 1385 (Fed. Cir. 2022) (rejecting argument that Board "misallocated the burden of persuasion" where Board's decision "first set[] forth its fact findings and reasoning for why it concluded that the claims would have been obvious and then responding to [patent owner]'s specific contrary arguments").

Finally, there is no indication in the Board's decision of impermissible hindsight bias. *Contra* BB 25-26. According to Masimo, the Board's conclusion that Webster is not restricted to a wavelength filter equated to a finding that "everything not specifically excluded is included" in the prior art. BB 25. This

argument fails to recognize that the Board made a specific affirmative finding—supported by explicit disclosure in Webster and buttressed by expert testimony—that Webster generally proposes using light filters to solve the known problem of unwanted light impacting photodetectors. Appx29 (citing Appx950; Appx654-655 (¶¶93-95)). That finding undergirded the Board's further conclusion that a skilled artisan would then have been motivated to combine Webster with a known light filter, like the louvered film in Melby.

The Board's motivation to combine analysis is sound as a legal matter. As will be discussed below, the Board's factual findings on motivation to combine are supported by substantial evidence, *see* Arg. Sec.III.B, and, therefore, should not be disrupted.

## III. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S OBVIOUSNESS FINDING BASED ON WEBSTER AND MELBY

Masimo's substantial evidence challenge presents a bevy of highly factual counterpoints to the Board's findings, none of which has merit. In presenting such arguments, Masimo effectively asks this Court to substitute its own factual finding on appeal for the factual finding the made Board made in its final decision. Accepting Masimo's invitation to have this Court re-analyze and re-weigh the evidence would be wholly improper, as "'it is not for [the Court] to second-guess the Board's assessment of the evidence,' but rather 'to determine whether substantial evidence supports the conclusion chosen by the Board.'" *Wilson v.*

*Martin*, 789 F. App'x 861, 870 (Fed. Cir. 2019) (quoting *Velander v. Garner*, 348 F.3d 1359, 1378-79 (Fed. Cir. 2003)).  In any event, the Board's reasoning is straightforward and well-grounded in the record.

Throughout its brief, Masimo essentially argues that the Board could have accepted Masimo's factual arguments over Apple's, which is insufficient to overturn the Board's well-supported factual findings on appeal.  *Monsanto*, 878 F.3d at 1341 ("If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence."  (internal quotations omitted)); *see also Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) ("[T]he substantial evidence test does not require that there be an absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record.").

Because the Board's factual findings are firmly rooted in the record and have more than substantial evidence support, this Court should affirm.

### A.    Substantial Evidence Supports the Board's Finding that Webster and Melby Suggest Placing Louvers Over a Photodetector

Masimo argues that the claim limitation requiring, in part, "a plurality of louvers positioned over the light sensitive detector" does not appear in any prior art reference.  BB 28-30.  As discussed above, this argument rests on the legally faulty

premise that the entirety of the louver limitation must be found wholesale in a single prior art reference.  *See supra* Arg. Sec.II.A.

### 1. Substantial Evidence Supports the Board's Finding that the Louver Limitation Exists in Webster-Melby Combination

Under the correct legal framework, substantial evidence plainly supports the Board's finding that the Webster-Melby combination teaches the louver limitation. None of the constituent elements of the limitation is missing from the prior art. For instance, Masimo argues that "Melby does not mention a light sensitive detector" or "suggest louvers positioned over a light sensitive detector."  BB 28-29.  Webster, however, is the reference Apple proposed, and the Board accepted, as the basis for both of these teachings.  As the Board recognized, the combined system includes "Webster's existing photodiode," which Webster "label[s] 'Light Sensitive Detector.'"  Appx30-31 (citing Appx905; Appx658-659 (¶102); Appx182).  The Board also recognized that Webster teaches the precise placement of its disclosed light filter as being "over" the detector: "Specifically, Webster is clear that to minimize unwanted light upon the detector, one could 'place some type of light filter *over* the detector.'"  Appx32 (emphasis in original) (quoting Appx950); *see also* Appx29-30 (citing Appx950; Appx654-655 (¶¶93-95)).  Masimo notably did not dispute in its patent owner response that Webster contains both light sensitive detectors and a filter placed over those detectors.  *See, e.g.*, Appx333 ("Webster places its wavelength filter 'over the detector.'").

Similarly, Masimo argues that "Webster does not mention louvers at all." BB 29. Melby does, though, and in the precise disclosure Apple and the Board relied upon in the combination with Webster. Specifically, the Board found, citing to Melby, that "Melby teaches a louvered plastic film that collimates light and reduces the influence of ambient light." Appx32 (citing Appx818 (3:63-4:25)); *see also* Appx30-31. Again, Masimo's patent owner response does not dispute that Melby teaches a louvered filter in the form of a film. *See* Appx306 ("Melby's light control film is "a louvered plastic film . . . .'" (citing Appx818 (3:3-4)).

Masimo's other arguments that the louver limitation is absent from the prior art relate to the precise configuration of the combined structure, arguing that there is no disclosure of louvers accepting light transmitted through blood and applied to the body tissue. BB 29-30 (at "Second . . ." and "Third . . ."). Yet, "[a] finding of obviousness . . . cannot be overcome by attacking references individually where the rejection is based upon the teachings of a combination of references." *Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1050 (Fed. Cir. 2019). Thus, neither reference was required to demonstrate satisfaction of this limitation in the abstract if it is shown in combination, as it is. *See id.*; *Game & Tech.*, 942 F.3d at 1352; *Fleming*, 28 F.4th at 1222. The Board found persuasive and adopted the testimony of Apple's expert Dr. Anthony that, "[i]n the combination, one of ordinary skill would have understood the light control film to restrict the amount of light that

reaches the detector from a particular direction, and therefore that the louvers accept the light when the sensor is properly applied to the patient's body."  Appx31 (quoting Appx659-660 (¶104)); *see also* Appx30 (reproducing Dr. Anthony's depiction of the combination structure, Appx658-659 (¶102)).

There is thus substantial evidence that the claimed elements exist in the references as combined.

## 2.    The Board Did Not Misuse the Skilled Artisan's Ordinary Creativity

Masimo's case law regarding the use of "ordinary creativity" to supply a missing claim limitation is inapplicable here.  *See* BB 30 (citing *DSS Tech. Mgmt., Inc. v. Apple Inc.*, 885 F.3d 1367 (Fed. Cir. 2018)).  *DSS* involves the distinguishable situation where a skilled artisan's common sense was used to modify a single prior art reference and supply an absent limitation without support from any other reference's teaching.  *Id.* at 1373.[6]  To the extent the Board applied "ordinary creativity" here—a phrase the Board never even used—it was at most for motivation to combine and not to supply a teaching wholly missing from the art. The quotation from the Board's decision Masimo reproduces highlights as much: "Petitioner demonstrates that it would have been reasonable for a person of

---

[6] Although the obviousness ground at issue in *DSS* was a multi-reference ground (Natarajan and Neve), only the Natarajan reference was used for the limitation at issue on appeal in which the Board used common sense to supply the missing claim limitation.  *See id.* at 1371, 1373.

ordinary skill in the art ***to look to Melby to provide a light control film*** to help

control ambient light and further to place that film over the photodiode detectors of

Webster." BB 30 (quoting Appx30)).

Analyzing what would result from a skilled artisan's ordinary creativity is

not only permitted, but required in an obviousness analysis. *See KSR*, 550 U.S. at

421 ("A person of ordinary skill is also a person of ordinary creativity, not an

automaton."). As *DSS* explains, "'ordinary creativity' is no different from the

reference to 'common sense,'" and "common sense is typically invoked to provide

a known ***motivation to combine***, not to supply a missing claim limitation." 885

F.3d at 1374 (emphasis in original, citation omitted). It is only when "ordinary

creativity" is used to supply a missing limitation, rather than supply motivation to

combine that it faces heightened scrutiny. *Id.* at 1374-75 ("In cases in which

'common sense' is used to supply a missing limitation, as distinct from a

motivation to combine, our search for a reasoned basis for resort to common sense

must be searching." (citation omitted)). The Board's decision here, therefore, does

not constitute an improper use of an artisan's ordinary creativity.

Throughout this argument, Masimo's mis-frames its criticism as one of

limitations missing from the prior art when it actually appears directed at the

Board's finding of a motivation to combine.[7]  As will be described in the following section, however, the Board's combination of Webster and Melby, and a skilled artisan's motivation for combining them, is also supported by substantial evidence.

**B.    The Board Correctly Determined that a Skilled Artisan Would Have Been Motivated To Combine Melby's Louvered Film with Webster's Pulse Oximeter System**

As described above, the Board's motivation to combine analysis is sound as a legal matter as it considers the prior art as a whole and does not rely on impressible hindsight.  *See supra* Arg. Sec.II.C.  The Board's factual findings relating to motivation to combine are supported by substantial evidence, and should not be displaced.

**1.    Substantial Evidence Supports the Board's Findings Relating to Melby's Louvered Film and Its Effect on Ambient Light**

**a.    Melby's Louvered Film Minimizes the Effect of Ambient Light**

Substantial evidence supports the Board's finding that the louvered film disclosed in Melby can be used to minimize the impact of ambient light.  Appx30-

---

[7] Contrary to Masimo's repeated suggestion, e.g., BB 27, prior-art teachings need not come from references in the ***same precise*** technical field, as long as there is adequate motivation for a skilled artisan to combine the references.  *See Game & Tech.*, 942 F.3d at 1352 (rejecting argument that obviousness combination "cannot disclose all of the claim elements because the claimed invention is directed to computer processes" and one prior art reference was directed to a manual card game).  To avoid duplication, Apple addresses this argument below in the context of motivation to combine.  *See infra* Arg. Sec.III.B.1.b.i.

32.  Masimo's argument focuses heavily on one of Melby's particular embodiments, but does not appreciate the full scope of Melby's disclosure, as Apple's expert Dr. Anthony explained.

In oximetry, ambient light is light that emanates from a source other that the oximeter's light emitter and is undesirable in the system.  Webster describes this concept, explaining that, in oximeters, "it is important to minimize the effects from light other than the optical signals of interest" and to "minimize unwanted light." Appx950; *see also* Appx657 (¶100).  Melby helps to achieve this goal.  Appx30. A portion of Melby the Board cited explains that, with its louvers, "the light that is most likely to be reflected," and therefore not passed to the photodetector in the combined system, "is the light that enters . . . at a grazing angle."  Appx30 (citing Appx818 (4:17-19)).

Apple's expert, Dr. Anthony, described this operation of Melby with reference to its Figures 1 and 2, which the Board also cited.  Appx30 (citing Appx815 (Figs. 1-2); Appx655-657 (¶¶97-98)).  Figures 1 and 2 demonstrate Melby's louvered film, with element 12 depicting a "transparent layer" through which light may pass, and element 14 showing a "louver" with "outer layers 16 and 18," and "inner layer 20":



Appx815 (Figs. 1-2).  As Dr. Anthony explained (quoting Melby directly), when

"[a] light ray 22 enters transparent layer 12," "[i]t then strikes layer 16 at surface

24," and "[m]ost of the light will enter layer 16 and be refracted."  Appx656-657

(¶98) (emphasis omitted) (quoting Appx818 (3:66-4:3); Appx22.  Thus, according

to Dr. Anthony, a skilled artisan "viewing the disclosure of Webster would have

recognized that Melby's film could be used in the Webster device as the 'light

filter' to control light *such that only light originating from the direction of the*

*light emitters reaches the detector*."  Appx657 (¶100) (citing Appx950).  This

evidence was relied upon by the Board, and is substantial evidence supporting its

factual finding that Melby's louvered film minimizes the effect of ambient light. *See* Appx30.

Moreover, Dr. Anthony had provided additional description of Melby as part of his declaration's description of a separate prior art ground Apple presented in which Melby was combined with the Diab and Benjamin prior art references. This ground uses Melby for the same teaching as the Webster-Melby ground at issue on appeal, i.e., Melby's louvered film. With respect to the Diab-Benjamin-Melby ground, Dr. Anthony explained that using Melby's film "***increase[s] the directionality of the light signal received*** in the combined device, thereby leading to a device that is ***less susceptible to the influence of ambient light*** and thus provides more accurate readings." Appx640 (¶69). Dr. Anthony reiterated the point in deposition when he responded to the question "[s]o how does Melby film increase directionality of the light signal," where increasing the directionality of light refers to "control[ling] light such that only light originating from the direction of the light emitters reaches the detector." Appx1731-1732 (185:19-186:6). He explained that, as a design goal, "***we're trying to minimize ambient light***, light from other directions other than that from the direction of the transmitter," which includes "the full spectrum of direction that you could be receiving." Appx1732 (186:10-15). "Melby, in combination, teaches the louvers as to how the direction being predominantly from the transmitter that's on the opposite side from the

receiver." *Id.* (186:16-20).  In other words, "Melby's film[] is used to control the light such that only the light originating from the direction of the light emitters reaches the detector."  Appx1733 (187:2-6).

Apple specifically directed the Board to Dr. Anthony's testimony regarding Melby and its connection to ambient light at the hearing.  First, Apple emphasized Dr. Anthony's testimony, explaining his position that Melby's film reduces "susceptibility to the influence of ambient light."  Appx467-468 (15:17-16:5); Appx1412 (reproducing Appx640 (¶69)).  Apple then related Dr. Anthony's description of Melby's reduction of ambient light from the Diab-Benjamin-Melby ground specifically to the Webster-Melby combination, explaining that "Melby specifically offers a louvered plastic film that collimates light and that ***therefore reduces the influence of ambient light***."  Appx470 (18:7-14); Appx1420 (citing Appx654-657 (¶¶94, 100)).  With this evidence, Apple argued that Melby's light control film "reduces noise by actually ***reducing the amount of ambient light***," Appx460-461 (8:25-9:1), and that the "film . . . prevent[s] ambient light from striking the photodetectors," Appx463 (11:9-10).  *See also* Appx465-466 (13:16-14:9).

The Board accepted this argument, concluding "Melby teaches a louvered plastic film that collimates light and reduces the influence of ambient light." Appx32 (citing Appx818 (3:63-4:25)).  The Board also found persuasive Dr.

39

Anthony's related analysis that, "[i]n the combination, one of ordinary skill would have understood the light control film to restrict the amount of light that reaches the detector from a particular direction," i.e., ambient light, "and therefore that the louvers accept the light when the sensor is properly applied to the patient's body." Appx31 (quoting Appx659-660 (¶104). Substantial evidence supports these findings.[8]

Masimo argues that the louver embodiment described in Melby cannot be used to reduce ambient light in Webster's oximeter because its purpose, in Melby's system, is to resolve ghost images. BB 33-34. Masimo ignores that, in obviousness, "[a] reference may be read for all that it teaches, including uses beyond its primary purpose." *In re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012) (citing *KSR*, 550 U.S. at 418-421). In fact, recent decisions have reminded that "reliance on the primary purposes of prior-art references" is one of the main criticisms the Supreme Court levied at a rigid obviousness analysis in *KSR*, which instead held that "familiar items may have obvious uses beyond their primary purposes." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 801 (Fed. Cir. 2021) (quoting *KSR*, 550 U.S. at 420). Dr. Anthony supported this concept as applied to

---

[8] Indeed, even Masimo's own description of louvers—which indisputably are present in Melby's film—demonstrates that they would reduce ambient light: "A louvered structure—like venetian blinds—accepts light only from a particular direction. Depending on the louver's orientation, the louvered structure blocks relatively more or less 'off-axis' light passing through it." BB 4.

this case, testifying that while Melby describes reduction of ghost images as one "example," its louvered film can be used more broadly "for various purposes." Appx1741-1744 (195:8-198:10). Indeed, Masimo conspicuously ignores Melby's specific teaching that its louvered film is "useful in a wide variety of applications." Appx819 (5:8-12).

Thus, Masimo has not shown that the Board's finding that Melby's louvered film minimizes the effect of ambient light lacks substantial evidence.

### b. A Skilled Artisan Would Have Placed Melby's Film Over Webster's Photodetector To Minimize Ambient Light

Masimo's next argument is highly related, asserting the Board's finding that a skilled artisan would have looked to Melby's film as a way to control against ambient light lacks substantial evidence. BB 34-38 (*contra* Appx30). The thrust of Masimo's argument appears to be that Melby and Webster are allegedly too dissimilar for a skilled artisan to combine them. *See, e.g.*, BB 36 ("Melby and Webster are not even in the same field."). Masimo is wrong for several reasons.

### i. The Court Should Reject Masimo's Analogous Art Argument

Masimo is incorrect to allege that "Melby and Webster do not deal with 'similar systems and methods.'" BB 36. As an initial matter, Masimo did not raise this argument before the Board and it is waived. *See, e.g.*, *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1329 (Fed. Cir. 2017) ("[W]e have held that a party

41

waives an argument that it failed to present to the Board because it deprives the court of the benefit of the Board's informed judgment . . . .").

Nonetheless, Masimo is wrong on the merits. The portion of the Webster containing most of the disclosure on which the Board relied is entitled "Optical Concerns," and has a sub-section entitled "Optical Filtering." Appx950. Melby similarly focuses on optical concerns like filtering, and discloses a "light control film." Appx814. "The scope prior art includes all analogous art," which includes "art is from the same field of endeavor, regardless of the problem addressed." *Donner Tech., LLC v. Pro Stage Gear, LLC*, 979 F.3d 1353, 1359 (Fed. Cir. 2020). As the '994 patent, Webster, and Melby all concern themselves with filtering light, they are analogous.

Even if the area of focus of Webster and the '994 patent (oximeters) differs from Melby (privacy filters), they are still analogous art. A reference "not within the field of the inventor's endeavor" is nevertheless analogous art if it "is reasonably pertinent to the particular problem with which the inventor is involved." *Id.* A reference is reasonably pertinent if it "logically would have commended itself to an inventor's attention in considering his problem." *In re Clay*, 966 F.2d 656, 659 (Fed. Cir. 1992); *see also KSR*, 550 U.S. at 417 ("When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one."). As

42

described above, the Board found as a factual matter—supported by substantial

evidence—that Melby solves the problem of reducing unwanted light, which is the

same problem Webster identifies.  Appx30; Appx32-33.  Therefore, a skilled

artisan would have properly considered Melby's teachings when looking to

improve Webster's system.  Appx30; Appx32-33; Appx658-660 (¶¶101-105); *see

supra* Arg. Sec.III.B.1.a.

### ii.    The Board Properly Credited Dr. Anthony's Testimony over Masimo's Expert's

Masimo asserts that Dr. Anthony's opinion that a skilled artisan would have

understood the benefit of using Melby's film in Webster's device is unsupported.

BB 35 (citing Appx657-659 (¶¶100-103)).  Masimo's surgical approach to Dr.

Anthony's declaration obscures his testimony.  Dr. Anthony's declaration first

describes, in paragraphs 92 to 100, the relevant portions of the Webster and Melby

references and proposes his combination of them.  Appx653-657 (¶¶92-100).  Dr.

Anthony then concludes, in the portion which Masimo highlights, by providing

opinion testimony as to why a skilled artisan would have had adequate motivation

for making this combination.  Appx658-660 (¶¶101-105).  The declaration, read

holistically, provides more than substantial evidence that a skilled artisan would

have looked to Melby to provide the filter Webster discloses.  *See Acoustic Tech.,

Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1376 (Fed. Cir. 2020) ("We

have previously determined that expert testimony constituted substantial evidence

43

of a motivation to combine prior art references, and we reach the same conclusion here." (citations omitted)).[9]

Contrary to Masimo's assertion, *see* BB 36-37, the Board was not required to accept Dr. Madisetti's different conclusion. *See Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1041 (Fed. Cir. 2017) ("[T]he PTAB is permitted to weigh expert testimony and other record evidence . . . ."). Dr. Madisetti testified that there would have been purported downsides to the Webster and Melby combination, a position which the Board acknowledged but never accepted. *See* Appx27 (citing Appx337; Appx1502-1503 (¶106)). However, even if the Board had accepted such a possibility, "a given course of action often has simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to combine." *Medichem, S.A. v. Rolabo, S.L.,* 437 F.3d 1157, 1165 (Fed. Cir. 2006); *see also Intel Corp.*, 21 F.4th at 796 (affirming the Board's weighing of tradeoffs); *In re Urbanski*, 809 F.3d 1237, 1243-44 (Fed. Cir. 2016) (POSITAs may be "motivated to pursue the desirable properties taught by [one reference], even at the expense of foregoing the benefit taught by [another]."). As a result, the Board was well within its authority to credit Dr. Anthony's testimony over Dr. Madisetti's.

---

[9] Masimo makes much of drafting error in Dr. Anthony's declaration where it refers to a "scattering medium," which was at issue in the Diab reference, in the Webster section.  BB 35-36.  This transposition of language from the declaration's Diab section, Appx638 (¶67), is of no moment, as the Board did not reproduce this harmless error in the analysis portion of its decision.  *Compare* Appx29-34.

Therefore, substantial evidence supports the Board's finding that placing Melby's louvered film over Webster's photodetector would have beneficially minimized the effects of ambient light.

> ### 2.    Substantial Evidence Supports the Board's Findings Regarding Use of Melby's Filter with Webster's Photodetectors
>
> ### a.    Webster Is Not Limited to Wavelength Filters

Masimo argues that the Board should have found that Webster's disclosure is confined to wavelength filters, and thus a skilled artisan would not have been motivated to combine Webster with Melby's film.  BB 38-41.  As discussed above, the Board considered Masimo's plea to place artificial restrictions on Webster's teaching and properly rejected it.  *See supra* Arg. Sec.II.B.  Instead, the Board made a factual determination, as it was free to do, that Webster's teaching to use "some type of light filter" is not limited to a wavelength filter.  Appx32; Appx950.

Specifically, the Board found persuasive the disclosure in Webster explaining that "[o]ne way to minimize unwanted light incident upon the detector is to place *some type of light filter* over the detector."  Appx950; Appx29.  Dr. Anthony focused on this disclosure in Webster, which the Board cited and found "persuasive[]."  Appx29 (citing Appx654-655 (¶¶93-95)).  Reviewing this disclosure in light of Masimo's argument that the filter must be restricted to a wavelength filter, the Board concluded: "There is no indication that this 'some type

of light filter' should be limited to just wavelength filters, which are certainly provided as one example mechanism for limiting unwanted light."  Appx32.

Masimo essentially argues that Webster's subsequent description of wavelength filters implicitly limits the broad and unambiguously non-limited characterization of light filters that the Board found compelling.  BB 38-41. Although Masimo disagrees with the Board's finding on this point, "what a piece of prior art teaches presents a question of fact that is reviewed for substantial evidence" and "[u]nder this deferential standard of review, [the Court] cannot replace the Board's reasonable interpretation of references with a different interpretation that [patent owner] would prefer."  *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1347 (Fed. Cir. 2021) (citations omitted).  Even were Masimo's strained reading of Webster a reasonable one (it is not), so too is the Board's given Webster's unrestricted disclosure of a light filter to help with unwanted light.  That means Masimo cannot prevail because "[w]hen it comes to competing interpretations of the teachings of prior art references, [the Court] must uphold the principle that if two inconsistent conclusions may reasonably be drawn from the evidence in record, ***the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence***."  *Id.* (citations omitted).

Furthermore, Masimo's specific arguments are without merit factually.

Masimo argues that Melby "consistently identifies" wavelength filters.  BB 39.  As

support for this argument, Masimo points to a single sentence of exemplary

disclosure about a filter allowing wavelengths of interest to pass through.  *Id.*

(quoting Appx950).  Masimo also references a statement in Webster relating

"optical filtering" to "spectral response."  BB 39-40 (quoting Appx950).  However,

the very next sentence in Webster again provides a ***broader*** disclosure of filtering,

reciting that "[a] number of optical filter types can be used."  Appx950.  None of

these statements giving mere examples of light filters compelled the Board to make

a finding that Webster's teaching "to place some type of light filter over the

detector" is restricted to wavelength filters or detracts from the substantial

evidence that supports the Board's actual factual finding to the contrary.

Finally, substantial evidence supports the Board's finding that wavelength

filters "seem to be discouraged by Webster."  Appx32-33.  In challenging this

finding, Masimo asserts that Webster discourages only gel wavelength filters, BB

40-41, but taken in context, Webster supports the Board's interpretation.  Webster

states:  "A number of optical filter types can be used.  Cheung *et al* (1993)

recommend a red Kodak No. 29 wratten gel filter to eliminate the flickering effect

of fluorescent light.  However, these external filters do not appear to be used much

in actual pulse oximetry designs."  Appx950.  Parsing this disclosure, Webster

47

states that: (1) many filter types can be used; (2) one example is wavelength filtering that uses a gel; and (3) "these ***external*** filters" do not appear to be used much. "[T]hese external filters" could reasonably refer to either the specific red Kodak No. 29 wratten gel filter mentioned, the class of gel filters, or the class of wavelength filters, and the Board was free resolve that ambiguity as it did to help reach its conclusion that Webster does not limit its teachings to wavelength filters. *See Eli Lilly*, 8 F.4th at 1347; *Cameron Int'l Corp. v. Nitro Fluids, L.L.C.*, No. 2021-1183, 2022 WL 636099, at *6 (Fed. Cir. Mar. 4, 2022) (non-precedential) ("[W]e defer to the Board's factual findings regarding what a reference discloses and whether it is ambiguous.").[10]

More importantly, Webster does not have to discourage the use of wavelength filters in order for substantial evidence to support the Board's well-reasoned finding that Webster does not limit its broad teaching to use "some type of filter" to wavelength filters only. This finding is supported by Webster itself and Dr. Anthony's testimony. Appx950; Appx654 (¶¶94-96).

---

[10] Masimo presents a related argument that Webster's purported comparison of gel-based wavelength filters with "photodiode mounting package" wavelength filters limits Webster's statement about wavelength filters "not appear[ing] to be used much in actual pulse oximetry designs." BB 40-41 (citing Appx950). However, this disclosure about the photodiode mounting package actually supports the Board's interpretation of Webster because it demonstrates that the filters Webster contemplates are not restricted to a single type or design. Appx950.

### b.    Webster Teaches the Use of Filters To Reduce Ambient Light

Masimo's argument that Webster does not teach using filters to reduce ambient light is squarely at odds with Webster's disclosure.  BB 42-46.  As has been discussed, Webster teaches that "placing some type of light filter over the detector" can prevent "unwanted light."  Appx950.  This statement falls under the master section "6.3. Optical Concerns" in Webster.  *Id.*  On the same page of Webster and just several paragraphs later, Webster contains the "6.3.2 Optical interference" subsection.  This subsection further explains "ambient light" is a type of light that "may cause problems for the photodiode," i.e., is unwanted.  *Id.*  Dr. Anthony, drew a connection between these statements in Webster, upon which the Board relied.  Appx29 (citing Appx654-655 (¶¶93-95)).  Webster clearly draws together using filters and minimizing ambient light, and the Board's finding of the same is supported by substantial evidence.  Appx29-30; Appx33.

According to Masimo, Webster does not teach the use of filters to minimize ambient light because Webster separately discloses other techniques for limiting ambient light, namely through using light impervious barriers, reducing the angle of incidence of light to the photodiode, and coating the housing of the photodiode.  BB 45-46 (citing Appx950).  Masimo further asserts that these additional approaches to limiting ambient light are the only ones that can be used to limit light that has travelled through tissue.  BB 42-43.  Dr. Anthony explained,

however, that Webster's disclosure of a filter applies to this type of light as well, and the Board was free to accept this testimony and Webster's disclosure to conclude that Webster's disclosure encompasses the use of a filter to limit light that has travelled through tissue.  Appx29 (citing Appx654-655 (¶¶93-95)).

In focusing on the disclosure of alternative approaches for limited ambient light, Masimo fails to appreciate that these approaches are merely alternative approaches to the use of a light filter.  As a primer on the state of the art in pulse oximetry in 1997, Appx12, Webster unsurprisingly provides multiple alternatives means for achieving certain goals, such as limiting the impact of ambient light.  Apple specifically demonstrated this point during the oral hearing, using a demonstrative marking up Webster's disclosure to illustrate:

50

**Webster Proposes Decreasing Angle of Incidence to the Detector**

**Webster**

Since this is a system with an optical interface, it is important to minimize the effects from light other than the optical signals of interest. One way to minimize unwanted light incident upon the detector is to place some type of light filter over the detector. This allows light of wavelengths of interest to pass through the filter but does not allow light of other wavelengths to pass through the filter. For the pulse oximeter to work effectively, most of the light being transmitted from the LEDs must not reach the photodiode unless it has passed through tissue containing arterial blood.

*6.3.2 Optical interference*

To minimize errors, the pulse oximeter designer must attempt to limit the light reaching the photodiode to that which has traveled through tissue containing arterial blood (Nellcor 1993). This can be accomplished through thoughtful LED/photodiode placement. Light impervious barriers should be placed between LEDs and the photodiode in all areas where the emitted light could reach the photodiode without passing through tissue (New and Corenman 1987). Two additional measures can be taken to ensure this (figure 6.6). One is to decrease the angle of incidence to the photodiode. The second is to coat the housing around the photodiode with a material that does not scatter or reflect light.

There are two types of optical interference that may cause problems for the photodiode. The first is excessive ambient light.

APPLE-1010 (Webster), 79

Appx1424 (reproducing, with emphasis, Appx950); Appx470-471 (18:17-19:19).

Webster thus plainly offers several options, which are not mutually exclusive, for reducing ambient light and minimizing its undesirable effect.  The Board's findings adopt this interpretation of Webster:  "Webster further recognizes *additional* measures that would reduce excessive ambient light, such as decreasing the angle of incidence of light to the photodiode."  Appx33.

Contrary to Masimo's argument that these additional measures would dissuade a skilled artisan from combining Webster with Melby, they in fact further support the Board's finding of a motivation to combine.  As Dr. Anthony testified, a skilled artisan "would have understood that a light control film placed over the detector could thus accept light from the light emission device from a particular direction based on the angle of the louvers within the light control film."

51

Appx659-660 (¶104). In the Webster-Melby combination, therefore, a skilled artisan "would have understood the light control film to restrict the amount of light that reaches the detector from a particular direction, and therefore that the louvers accept the light when the sensor is properly applied to the patient's body." *Id.* In other words, Webster's recognition that using filters and modifying the angle of incidence are ways to minimize undesirable ambient light makes Melby an ideal combinatory reference with Webster because Melby's film incorporates both of these concepts.

The Board agreed with this analysis, concluding that a skilled artisan would appreciate that Melby's film filter in particular would "reduc[e] the angle of incidence for light of all wavelengths" and thus, "the proposed combination of Webster and Melby would have been a solution contemplated by Webster and the combination would have been obvious" to a skilled artisan. Appx33-34 (citing Appx659-660 (¶104)). The Board's conclusion that Webster teaches a filter to minimize the impact of ambient light is rooted in the disclosure of Webster itself and the interpretive testimony of Dr. Anthony—i.e., substantial evidence supports its findings. This Court should reject Masimo's invitation to substitute Masimo's interpretation of Webster with the reasonable and well-supported interpretation of the Board. *See Eli Lilly*, 8 F.4th at 1347.

### 3. Webster and Melby's Teachings Work Together To Produce an Obvious Variant

Masimo's final argument rests on false premises already addressed. Specifically, Masimo claims that the specific manner in which Webster and Melby's describe decreasing the angle of incidence of light to the photodiode are incompatible, which bars any motivation to combine them.  BB 47-52.

This argument depends upon the incorrect assertion that Melby's louvered film cannot be used to reduce ambient light.  BB 47-48.  As described above, there is substantial evidence to support the Board's finding that Melby's film reduces ambient light.  *See supra* Arg. Sec.III.B.1.a.  As Dr. Anthony explained, Melby's film "increase[s] the directionality of the light signal received in the combined device, thereby leading to a device that is ***less susceptible to the influence of ambient light*** and thus provides more accurate readings."  Appx640 (¶69). Similarly, Masimo retreads its argument that the Board's motivation to combine analysis was impacted by hindsight, BB 48, but as described earlier, it was not. *See supra* Arg. Sec.II.C.

Masimo further argues that the Board erred in concluding that "Melby's film would, ***by reducing the angle of incidence for light of all wavelengths***, work in precisely the manner that Webster contemplates . . . ."  BB 47 (quoting Appx33). The basis for Masimo's argument here is that Webster implements this angle reduction with a recessed photodiode rather than a louvered film.  BB 49.  The

emphasized portion of the Board's decision is significant, however, because it demonstrates that the focus Board's conclusion was the functional manner in which Webster and Melby work, not the precise means they implement. *Cf. In re Mouttet*, 686 F.3d at 1332 ("It is well-established that a determination of obviousness based on teachings from multiple references does not require an actual, physical substitution of elements."). As explained above, both Webster and Melby concern reducing the angle of incidence to address ambient light, so the Board's conclusion here that a skilled artisan would have been motivated to combine them to achieve this benefit is a correct one. *See supra* Arg. Sec.III.B.2.b.

Regardless, Webster never states or suggests that its specific implementation using a recessed photodiode is the only way one may reduce the angle of incidence. To the contrary, Webster more generally states that one way to reduce ambient light is "to decrease the angle of incidence to the photodiode," without qualification. Appx950. Webster also never teaches away from using a louvered film to decrease the angle of incidence. Rather, its disclosure of placing a filter atop a detector coupled with its disclosure of reducing the angle of incidence creates a strong suggestion that a skilled artisan would combine Webster with Melby, as the Board found. Appx33-34.[11]

---

[11] A supporting premise of Masimo's argument is that a louvered structure would have a detrimental effect on Webster by unduly blocking light from reaching the detector. BB 50. As described earlier, however, the Board never accepted this premise as a factual matter, and even if it had, "a given course of action often has

Masimo lastly argues that the Board erred in concluding that the use of Melby's film in Webster would "achieve precisely the end contemplated by each of Melby and Webster," BB 51 (quoting Appx33), and that a skilled artisan would have found the combination obvious, BB 52 (quoting Appx33-34).  No new assertions support this argument, but instead Masimo advances its flawed insistence that Melby's film cannot be used over a detector or to reduce ambient light, and that Webster's filter is limited to wavelength filtering. *Id.* at 51-52.  This argument is simply an amalgamation of Masimo's earlier arguments, and the Court should reject it for the reasons stated throughout this brief.

* * *

The Board's opinion is sound both legally and factually, and it should be affirmed.

## IV.    MASIMO PRESENTED NO OBJECTIVE EVIDENCE OF NONOBVIOUSNESS TO THE BOARD

Masimo sporadically asserts that its alleged invention's use of louvers and the louver limitation "contradicted conventional wisdom" and thus achieved unexpected results. *See, e.g.*, BB 1, 4-5.  It also vaguely suggests that the '994 patent's invention is somehow responsible for Masimo's alleged success in the

---

simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to combine." *Medichem,* 437 F.3d at 1165).  *See supra* Arg. Sec.III.B.1.b.

market.  BB 1.  However, Masimo presented no evidence or argument concerning objective evidence of nonobviousness to the Board.  Appx10 n.1 ("Neither party has introduced objective evidence of non-obviousness."); *see also* Appx285-287; Appx382-383.  Because Masimo "did not ask the Board to make any factual determinations" on these issues, this Court should reject Masimo's puffery. *Mobility Workx, LLC v. Unified Patents, LLC*, 15 F.4th 1146, 1152 n.2 (Fed. Cir. 2021).

## V.    IF NOT AFFIRMED, THE CASE NEEDS TO BE REMANDED FOR THE BOARD TO ANALYZE APPLE'S REMAINING GROUNDS

For the reasons described above, the Court should affirm the Board's well-supported and well-reasoned decision.  If, however, the Court were to set the Board's decision aside, this case must be remanded.  Apple presented four obviousness grounds in its petition.  Appx142.  In its final written decision, the Board substantively addressed only the Webster and Melby ground.  *See* Appx17-34.  Upon finding that Webster and Melby, as combined, render the challenged claim of the '994 patent obvious, the Board indicated that it would not reach Apple's remaining grounds.  *See* Appx34-35.  Thus, should the Board's decision be vacated, the case must be remanded for the Board to analyze and rule upon Apple's other grounds, which further demonstrate that claim 15 of the '994 patent is unpatentable.

## <u>CONCLUSION</u>

For the foregoing reasons, Apple respectfully ask the Court to affirm the

Board's decision.


Dated:  February 1, 2023                     Respectfully submitted,

                                                       _/s/ Lauren A. Degnan_____
                                                       Lauren A. Degnan
                                                       W. Karl Renner
                                                       Michael J. Ballanco
                                                       Laura E. Powell
                                                       FISH & RICHARDSON P.C.
                                                       1000 Maine Ave., Suite 1000
                                                       Washington, DC 20024
                                                       Telephone: (202) 783-5070

                                                       Robert Courtney
                                                       FISH & RICHARDSON P.C.
                                                       60 South 6th Street, Suite 3200
                                                       Minneapolis, MN 55402
                                                       Telephone: (612) 335-5070

                                                       ***Attorneys for Appellee Apple Inc.***

## <u>CERTIFICATE OF SERVICE AND FILING</u>

I certify that on February 1, 2023, I electronically filed the foregoing

**RESPONSE BRIEF** of appellee using the Court's CM/ECF filing system.

Counsel for appellant were electronically served by and through the Court's

CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).


*/s/ Lauren A. Degnan*
Lauren A. Degnan

## <u>CERTIFICATE OF COMPLIANCE</u>

The **RESPONSE BRIEF** of appellee is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b). The brief contains 12,587 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 Point.


Dated: February 1, 2023                    */s/ Lauren A. Degnan*
                                            Lauren A. Degnan