No. 22-1894

IN THE

# United States Court of Appeals

### FOR THE FEDERAL CIRCUIT

———————————

MASIMO CORPORATION,

*Appellant,*

*v.*

APPLE INC.,

*Appellee,*

---

APPEAL FROM THE PATENT TRIAL AND APPEAL BOARD
CASE NO. IPR2020-01526

---

**REPLY BRIEF OF APPELLANT MASIMO CORPORATION**

---

Joseph R. Re, *Principal Counsel*
Stephen C. Jensen
John M. Grover
Shannon Lam
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

Jeremiah S. Helm
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1717 Pennsylvania Ave., N.W.
Washington, D.C. 20006
(202) 640-6400

*Attorneys for Appellant*
*Masimo Corporation*

April 9, 2023

# TABLE OF CONTENTS

**Page No.**

CERTIFICATE OF INTEREST ........................................................................ v

I.    INTRODUCTION ................................................................................... 1

II.   ARGUMENT......................................................................................... 2

   A.    The Board's analysis was legally erroneous .................................. 2

      1.    The combination of Webster and Melby does not
            include all of the claimed limitations.................................... 2

      2.    The Board erred by relying on isolated pieces of the
            art instead of the art as a whole........................................... 4

      3.    The Board erred in its analysis of a motivation to
            combine ................................................................................. 9

   B.    The Board's findings are unsupported by substantial
         evidence...................................................................................... 10

      1.    The Board's finding of a motivation to combine
            Webster and Melby relies on its unsupported finding
            that Melby's film is designed to minimize ambient
            light ...................................................................................... 11

         a.    The Board's finding that Melby teaches its
               louvered structure was designed to minimize
               ambient light is unsupported by substantial
               evidence .................................................................. 11

         b.    The Board's finding that it would have been
               "reasonable" for a skilled artisan to look to
               Melby for a film to help control ambient light
               and further to place that film over the detectors
               of Webster is unsupported by substantial
               evidence .................................................................. 15

# TABLE OF CONTENTS
## (*cont'd*)

**Page No.**

2.  The Board's findings regarding Webster are
    unsupported by substantial evidence ................................. 20

    a.  Webster only discusses wavelength filters
        above a pulse oximeter's detector .......................... 20

    b.  Webster does not teach a filter that blocks
        ambient light ............................................. 22

    c.  The Board's finding that Webster and Melby
        teach the same goals, and work in precisely the
        same manner to achieve precisely the same end
        is unsupported by substantial evidence .................. 25

3.  The combination of Webster and Melby does not
    include a plurality of louvers positioned over the light
    detector to accept light as claimed .................................... 27

III.  CONCLUSION........................................................ 30

CERTIFICATE OF COMPLIANCE................................................. 32

# TABLE OF AUTHORITIES

**Page No(s).**

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
  949 F.3d 1366 (Fed. Cir. 2020) ..................................................... 18

*Chemours Co. v. Daikin Indus.*,
  4 F.4th 1370 (Fed. Cir. 2021) ........................................................ 10

*DSS Tech. Mgmt., Inc. v. Apple Inc.*,
  885 F.3d 1367 (Fed. Cir. 2018) .................................... 4, 10, 29, 30

*In re Fine*,
  837 F.2d 1071 (Fed. Cir. 1988) ................................................... 4, 7

*Harmonic Inc. v. Avid Tech., Inc.*,
  815 F.3d 1356 (Fed. Cir. 2016) ....................................................... 8

*Henny Penny Corp. v. Frymaster LLC*,
  938 F.3d 1324 (Fed. Cir. 2019) ....................................................... 5

*Intel Corp. v. Qualcomm Inc.*,
  21 F.4th 784 (Fed. Cir. 2021) ....................................................... 14

*IXI IP, LLC v. Samsung Electronics Co.*,
  903 F.3d 1257 (Fed. Cir. 2018) .................................................... 7, 8

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
  688 F.3d 1342 (Fed. Cir. 2012) ..................................................... 24

*In re Magnum Oil Tools Int'l, Ltd.*,
  829 F.3d 1364 (Fed. Cir. 2016) ..................................................... 16

*Masimo Corp. et al. v. Apple Inc.*,
  Civil Action No. 8:20-cv-00048-JVS-JDE.................................... v

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,
  719 F.3d 1346 (Fed. Cir. 2013) ....................................................... 5

## TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
  520 F.3d 1358 (Fed. Cir. 2008) ...................................................... 9

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
  655 F.3d 1364 (Fed. Cir. 2011) ............................................... 4, 9

*TQ Delta, LLC v. Cisco Sys., Inc.*,
  942 F.3d 1352 (Fed. Cir. 2019) ............................................... 10

## OTHER AUTHORITIES

Fed. R. App. P. 26.1 ............................................................ v

Federal Rule of Appellate Procedure 32 ......................................... 32

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellant Masimo Corporation certifies the following:

1.    The full name of every party represented by me is:

Masimo Corporation.

2.    The name of the real party-in-interest represented by me is:

Masimo Corporation.

3.    All parent corporations and any publicly held companies that own more than 10 percent or more of the stock of the party represented by me are:

BlackRock Inc.

4.    The name of all law firms and the partners or associates that appeared for the party in the lower tribunal or are expected to appear for the party in this court and who are not listed on the docket for the current case:

Knobbe, Martens, Olson & Bear, LLP: Jarom D. Kesler, Benjamin A. Katzenellenbogen, and Stephen W. Larson.

5.    The case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

*Masimo Corp. et al. v. Apple Inc*., Civil Action No. 8:20-cv-00048-JVS-JDE.

6.    Information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):

None.

# I. __INTRODUCTION__

Webster is a book about pulse oximeters. Webster explains that pulse oximeters include small sensors that attach to a patient's ear, finger, or nose. Pulse oximeters use light absorption as a proxy for electronically monitoring a patient's blood oxygen levels. Melby, in contrast, is a patent directed to improving an automobile dash display panel. Melby's louvered film prevents light emitted from the car display from forming "ghost images." Neither reference suggests the subject matter of the other. Ghost image problems created by light emitted from large displays are irrelevant to the medical monitoring science of pulse oximetry. Monitoring light absorption using a detector as a proxy for physiological measurements is irrelevant to automobile displays.

The improper combination of Webster and Melby does not teach or suggest positioning Melby's louvered structure, which reduces ghost images from a display's emitted light, over Webster's detector, which senses light after interacting with a patient's tissue. Despite the differences between Webster and Melby, the Board concluded a skilled artisan would have been motivated to combine Webster and Melby to create an entirely new sensor structure that is not disclosed in either reference, *i.e.*, a louvered film above Webster's detector.

The Board suggested Webster and Melby are connected to one another based on the erroneous finding that Melby's film is "designed to minimize" ambient light.

*See, e.g.*, Appx0030.  There is no support for this finding.  The Board nonetheless repeatedly relied on this finding in its obviousness analysis.  Instead of explaining how Webster and Melby support the Board's findings, Apple now rewrites the Board's decision and ignores the Board's repeated errors.  Apple also newly cites evidence from different obviousness combinations that are not on appeal and not relied on by the Board.  Apple's briefing only underscores the Board's errors.

Ultimately, the Board's analysis relied on an erroneous legal approach that focused on isolated words instead of the teachings in Webster and Melby.  The Board's legally erroneous approach led to erroneous factual findings unsupported by substantial evidence.  The Board's decision should be reversed.

## II. <u>ARGUMENT</u>

### A. <u>The Board's analysis was legally erroneous</u>

#### 1. <u>The combination of Webster and Melby does not include all of the claimed limitations</u>

Masimo's opening brief explained that the critical claim feature "of a louvered film positioned over a detector so that it accepts light from the general direction of an emitter after passing through the body is not in Webster, Melby, ***or the combination of references***." Br. 30.[1]  Nevertheless, Apple asserts that "Masimo seriously err[ed]" because, in Apple's view, Masimo argued that "neither Webster

_____

[1] All emphasis added unless otherwise noted.

nor Melby *alone*" teaches the claimed plurality of louvers positioned over the detector.  Resp. 16.

Even in combination Webster and Melby do not disclose all of the claimed elements.  Melby only teaches louvered films positioned over a light *emitter*, such as a car dashboard display or a computer monitor.  Melby does not mention a detector, let alone suggest any benefit for a louvered film positioned over a detector in a physiological sensor.  In contrast, as Apple admits, Webster does not mention a louvered structure in *any* context.  *See id*. 18 ("Webster does not itself describe the use of louvers").  An emitter and a detector serve opposed functions of producing light and accepting light, respectively.  The combination of Webster and Melby does not teach the distinct feature of a louvered structure positioned over a *detector* in a physiological sensor.

Apple also argues that "[t]he Board's Decision properly explains how Webster and Melby fit together." *Id*. 17.  But Apple merely quotes the Board's statements, which themselves are unsupported by substantial evidence. *Id*. 17-18.  The only "evidence" cited by Apple is a figure prepared by its expert found in neither Webster nor Melby. *Id*. 18.  Apple's concocted figure is a classic example of impermissible hindsight.  Starting from the reconstructed invention and working backwards is the only way for a POSITA to arrive at the figure.  Apple also argues that the combination of Webster and Melby is an "archetypal" and "straightforward

combination of elements from two references." *Id*. 19. What Apple deems "archetypal" is taking a film mounted to a car's dashboard display to prevent ghost images and placing that film over a medical sensor's light detector that is devoid of any display or screen whatsoever.

The Board repeatedly erred by analyzing what "could" happen or what "would have been reasonable" to do, typical hallmarks of impermissible hindsight. *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1376 (Fed. Cir. 2011); *see, e.g.*, Appx0030 ("would have been reasonable for a person of ordinary skill in the art to look to Melby to provide a light control film to help control ambient light"); Br. 25-26. Apple asserts that the Board's reference to what "would have been reasonable" actually means "there was an apparent reason" to combine the references. Resp. 18-19. The Board's decision makes no such distinction. Instead, the Board's analysis improperly relied on ordinary creativity to attempt to fill the large gaps between car dashboard technology for displaying images, and complicated physiological sensor technology for detecting light passing through tissue. *DSS Tech. Mgmt., Inc. v. Apple Inc.*, 885 F.3d 1367, 1377 (Fed. Cir. 2018).

## 2.    The Board erred by relying on isolated pieces of the art instead of the art as a whole

The Board also erred by consistently considering pieces of the references in isolation. Br. 22-27; *see In re Fine*, 837 F.2d 1071, 1075 (Fed. Cir. 1988) ("One cannot use hindsight reconstruction to pick and choose among isolated disclosures

in the prior art to deprecate the claimed invention."); *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1365 (Fed. Cir. 2013) (same).  For example, the Board improperly relied on Webster's "some type of light filter" as a broad disclosure.  Appx0032, Appx0950.  The Board found "no indication that this 'some type of light filter' should be limited to just wavelength filters." *Id*.  But that Webster quote is cherry-picked from a paragraph that continues "…place *some type of light filter* over the detector.  *This allows* light of *wavelengths* of interest to pass through *the filter*…."  Appx0950.  Webster's single continuous disclosure, read as a whole, clearly indicates that its discussion of "some type of light filter" is a wavelength filter.  The Board misunderstood Webster's discussion of "some type of light filter" as a broad disclosure by reading those five words in insolation.  The Board's approach violated the "longstanding principle that the prior art must be considered for all its teachings, not selectively." *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019).

Apple argues that the Board properly relied on "Webster's broad and unqualified teaching to use 'some type of light filter.'" Resp. 20.  But Apple repeats the Board's error by bootstrapping five words from Webster—"some type of light filter"—into a so-called "broad and unqualified teaching." *Id*.  The Board and Apple err by relying on those five words in isolation to buttress their errant view that Webster discloses something other than a wavelength filter. The Board and Apple

must ignore Webster's explanation in the next sentence that the "some type of light filter" "allows light of wavelengths of interest to pass through the filter but does not allow light of other wavelengths to pass through the filter," which is the definition of a wavelength filter. Appx0950; *see also id*. (addressing "[o]ptical filtering" in its own section and explaining that the filters "limit the spectral response of the photodiode" to certain wavelengths of light).

Apple asserts that it would have been reversible error if the "Board failed to recognize Webster's teaching to use 'some type of light filter.'" Resp. 21. The Board, however, erred by considering a few words in isolation and ignoring Webster's clear indication that "*[t]his* allows light of *wavelengths* of interest to pass through *the filter*…." Appx0950. The Board's finding that there was "no indication that this 'some type of light filter' should be limited to just wavelength filters," Appx0032, ignores Webster's surrounding disclosure that explains the "some type of light filter" is a wavelength filter. While Apple suggests that the Board "treated the wavelength disclosure as a non-limiting embodiment," Resp. 22, Webster, when properly read as a whole, only discloses a wavelength filter.

The Board compounded its error by finding Webster's criticism of wavelength filters is affirmative evidence that "some type of light filter" must be a broad teaching that includes non-wavelength filters. Appx0032-0033. Webster observes that wavelength filters are not "used much in actual pulse oximetry designs."

Appx0950.  This observation is not a suggestion to use types of filters other than wavelength filters.  Instead, Webster immediately explains that other structures like the photodiode "package may contain filtering material" that "filters out selected wavelengths of light." *Id*.  The Board ignores this context and instead erroneously "use[d] hindsight reconstruction to pick and choose among isolated disclosures." *In re Fine*, 837 F.2d 1071, 1075 (Fed. Cir. 1988).

Apple argues that Webster teaches "a non-limiting embodiment."  Resp. 24.  But the Board found Webster was "a comprehensive summary of the state of the art."  Appx0012.  If wavelength filtering was only a "non-limiting embodiment," Webster's comprehensive summary should at least mention another type of filter.  But Webster mentions no "alternative embodiment[s]," Resp. 24, just the generally undesirable wavelength filter.  Appx0950.  Apple also incorrectly suggests that Masimo argued that Webster's disclosure was a teaching away.  Resp. 24.  Masimo did not raise a teaching away argument.  Br. 22-27.  Instead, Masimo explained that the Board erred by cherry-picking small pieces from Webster, considering those pieces in isolation, and reconstructing the invention using hindsight.  Br. 23-24.

Apple cites *IXI v. Samsung* as establishing that exemplary disclosures do not exclude other implementations.  Resp. 25.  *IXI*, however, involved an express teaching that a first reference used a system disclosed in a second reference.  *See IXI IP, LLC v. Samsung Electronics Co.*, 903 F.3d 1257, 1263-64 (Fed. Cir. 2018)

(discussing Marchand's use of the JINI LUS system). As such, the features of the second reference were implicitly disclosed by the first. *Id*. Unlike *IXI*, there is no explicit or implicit link between Webster and Melby, and no implicit teaching that Webster implemented Melby's louvered film over Webster's detector. The Board nevertheless found "that Webster teaches that in one embodiment light filters, such as those found in Melby, could be used above the detectors." Appx0032. Likewise, the Board found that Webster, despite ***only*** discussing wavelength filters, nevertheless suggested the use of other filtering materials by discouraging the use of wavelength filters. Appx0032-0033. Thus, unlike *IXI*, which included an express link to another reference, the Board erred by expanding Webster's teachings beyond its actual disclosure.

Obviousness must be based on the art's teachings, not what is omitted. The Board's approach improperly required Masimo to prove that louvered films were excluded by Webster's disclosure. *See Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1363 (Fed. Cir. 2016) ("In an IPR, the petitioner has the burden from the onset to show with particularity why the patent it challenges is unpatentable."). Apple argues the Board's approach should be understood as shifting the burden of persuasion. Resp. 28-29. But instead of assessing what Webster disclosed, the Board relied on "other likely embodiments" not disclosed in Webster. Appx0032. The Board's approach improperly assigned Masimo the burden of proving Webster

excludes louvered films, which led to the erroneous finding that Webster "teaches that in one embodiment light filters, such as those found in Melby, could be used above the detectors." *Id*.

### 3.    The Board erred in its analysis of a motivation to combine

The Board repeatedly applied an incorrect motivation to combine analysis by considering whether a combination was "reasonable" or "could" be used.  Br. 24-25.  Whether a feature ***could*** be used in a device or whether the resulting combination is ***reasonable*** relies on a speculation and "does not sufficiently direct or instruct one of skill in this art." *Star Sci.*, 655 F.3d at 1376.  Apple argues that "[t]he few instances" where the Board applied the wrong legal approach should be excused based on the Board's decision in its entirety.  Resp. 26-27.  But, the Board's analysis looked backwards at a speculative combination and determined the combination would have been reasonable after the combination was already made.  *See, e.g.*, Appx0030 (reasonable "to look to Melby"); Appx0031 (the petitioner's figure illustrating the final combination "would have been reasonable"); Appx0032 (Melby's louvered film "could be used"; an artisan "would have found the combination [] reasonable").  Working backwards from a petitioner-created figure is just a different flavor of impermissible hindsight reconstruction.  *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008).

**B.**    **The Board's findings are unsupported by substantial evidence**

Masimo's opening brief highlighted key errors in the Board's factual findings. Br. 27-52. Apple's responds by arguing that Masimo "presents a bevy of highly factual counterpoints to the Board's findings" and that "Masimo effectively asks this Court to substitute its own factual finding on appeal." Resp. 29. This is inaccurate. Masimo identified errors in the Board's approach and corresponding findings that are unsupported by substantial evidence.

Instead of substantively addressing the Board's numerous mistakes, Apple repeatedly invokes the substantial-evidence standard of review. But the substantial evidence standard is not an express lane to judicial affirmance. This Court does not hesitate to reverse or remand where, as here, the Board makes findings that are unsupported or the result of error. *See, e.g., Chemours Co. v. Daikin Indus.*, 4 F.4th 1370, 1376 (Fed. Cir. 2021); *TQ Delta, LLC v. Cisco Sys., Inc.,* 942 F.3d 1352, 1362 (Fed. Cir. 2019); *DSS Tech. Mgmt., Inc. v. Apple Inc*., 885 F.3d 1367, 1377 (Fed. Cir. 2018).

Apple incorrectly suggests that Masimo argues the Board's error was choosing from one of multiple possible interpretations. Rather, Masimo consistently explained that the Board's findings lack substantial evidence. For example, the Board found the purpose of Melby's louvered structure was to prevent ambient light from reaching a light detector. Appx0029-0030. But this concept is absent from

Melby.  The Board relied on this erroneous finding as the basis for its obviousness analysis.  Without this erroneous finding, the Board's decision falls apart.

Likewise, the Board erred in its analysis of Webster.  As discussed above, the Board legally erred by reading five words of Webster in isolation.  The Board's legally incorrect approach resulted in corresponding unsupported factual findings, culminating in the erroneous finding that Webster and Melby act in "precisely" the same manner and achieve "precisely" same end.  Appx0033.  The precise manner and precise end, according to the Board, somehow find commonality between an oxygen sensor and a film that eliminates ghost images from a car dashboard display.

Instead of addressing the deficiencies in the Board's actual findings and motivation analysis, Apple creates new findings, misconstrues Masimo's arguments, and then responds to never-made arguments. As set forth in Masimo's opening brief (Br. 27-52) and further below, the Board's findings are not supported by substantial evidence.  Accordingly, the Board's decision should be reversed.

1. **The Board's finding of a motivation to combine Webster and Melby relies on its unsupported finding that Melby's film is designed to minimize ambient light**

   a. **The Board's finding that Melby teaches its louvered structure was designed to minimize ambient light is unsupported by substantial evidence**

The Board's motivational findings rest on the incorrect understanding that "ambient light" "is the type of light the light control film of Melby is designed to

minimize." Appx0029-0030. Masimo's opening brief described in detail why the finding that Melby's film was "designed to minimize" ambient light is unsupported. Br. 31-34. The Board's erroneous understanding that Melby's film was designed to minimize ambient light formed the basis for its obviousness analysis. Applying its initial misunderstanding, the Board found "it would have been reasonable for a person of ordinary skill in the art to look to *Melby to provide a light control film to help control ambient light*." Appx0030. Later the Board found that "*Melby teaches* a louvered plastic film that collimates light and *reduces the influence of ambient light*." Appx0032. And yet later the Board found that the "similar objective" between Melby and Webster "being a reduction of optical interference *in the form of excessive ambient light* with a light control film being placed over a light sensitive detector." Appx0033.

Apple never addresses the Board's finding that "ambient light" "is the type of light the light control film of Melby *is designed to minimize*." Appx0029-0030. Neither the Board nor Apple explain how reducing ghost images from emitted light connects to the idea of minimizing ambient light; there is no such connection. Instead, Apple proffers evidence supporting a different finding: that an artisan would have recognized that "Melby's louvered film minimizes the effect of ambient light" *after* it had been combined with Webster. Resp. 37-38 (citing Appx0030). But the Board repeatedly relied on its finding that Melby's film was "designed to

minimize" ambient light as motivation for making the combination in the first place. Appx0030-0032.

In addition to rewriting the Board's decision, Apple relies on evidence from a completely different combination of references (the "Diab-Benjamin-Melby" combination) not at issue in this appeal. Resp. 38-39. The Board did not reach this combination of references. Appx0034-0035. As a result, the Board's decision did not rely on the evidence or attorney argument cited in Apple's brief as allegedly providing substantial evidence for the Board's findings. Apple nevertheless now argues that the Board "accepted" its attorney arguments found in those combinations not at issue and not used by the Board. Resp. 39. The Board only cited Melby's disclosure—not Apple's new evidence and arguments—when finding "Melby teaches a louvered plastic film that collimates light and reduces the influence of ambient light." Appx0032 (*citing* Appx0818 3:63-4:25). And the cited part of Melby does not support the Board's finding that Melby teaches its louvered film "reduces the influence of ambient light." Appx0818 3:63-4:25.

Apple also cites testimony from its expert about what a skilled artisan would have understood *after* making the combination. Resp. 39-40. But an artisan's alleged understanding of the benefits realized *after* the combination is made does not provide substantial evidence support for making the combination in the first place. Apple's suggested approach is the epitome of impermissible hindsight.

Apple further argues that Masimo "ignores" that "familiar items may have obvious uses beyond their primary purposes." *Id*. 40 (citing *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 801 (Fed. Cir. 2021)). Apple suggests that Masimo argued "the louver embodiment described in Melby cannot be used to reduce ambient light in Webster's oximeter because its purpose, in Melby's system, is to resolve ghost images." Resp. 40 (citing Br. 33-34). Masimo's actual argument is that substantial evidence does not support the Board's finding that "ambient light" "is the type of light the light control film of Melby is designed to minimize." Br. 33. Melby does not link its louvered structure to the function of minimizing ambient light. Instead of describing ambient light, Melby explains its louvered design reduces ghost images from light *emitted* from back-lit displays, such as a car dashboard display or a computer screen. Appx0817-0819 2:12-15, 2:42-45, 4:42-47, 6:7-10. Melby explains that the refraction of emitted light between different parts of the louvered film (not ambient light) is what causes these ghost images. Appx0817 2:27-34. Apple also cites Melby's generic statement that its film "is useful in a wide variety of applications." Resp. 41 (citing Appx0819 5:8-12). This generic statement does not mention ambient light and does not support the Board's finding that "ambient light" "is the type of light [Melby's film] is designed to minimize." Appx0029-0030.

Apple identifies no evidence supporting the Board's finding that "ambient light" "is the type of light the light control film of Melby is designed to minimize." Appx0029-0030. The Board repeats and relies on its erroneous finding throughout its decision. Given that finding's essential role in the Board's analysis, this error alone justifies reversal of the Board's decision.

> **b.    The Board's finding that it would have been "reasonable" for a skilled artisan to look to Melby for a film to help control ambient light and further to place that film over the detectors of Webster is unsupported by substantial evidence**

Masimo's opening brief explained that the Board's finding "that it would have been reasonable for a person of ordinary skill in the art to look to Melby to provide a light control film to help control ambient light and further to place that film over the photodiode detectors of Webster" is unsupported by substantial evidence. Br. 34-38. Masimo explained that the Board's findings relied on its unsupported misunderstanding that Melby's louvers are designed to minimize ambient light. *Id*. 34. Thus, the Board's finding that an artisan would have "look[ed] to Melby to provide a light control film to help control ambient light" was likewise flawed. *Id*. Masimo also explained that the Board's reliance on unsupported and conclusory statements from Apple's expert's declaration cannot provide substantial evidence support for the Board's findings. *Id*. 34-38.

In response, Apple first argues that Webster and Melby are analogous art, and asserts that "Masimo did not raise this [analogous art] argument before the Board

and [that] it is waived." Resp. 41. Apple's assertion responds to an argument Masimo did not make. Apple's expert stated that it would have been obvious "to modify Webster to include a light control film as described by Melby [by] placing a light control film over the photodetector in place of a scattering medium because doing so entails the use of known solutions to improve similar systems and methods in the same way." Appx0658-0659 ¶102. The Board relied on this analysis. *See* Appx0029-0030 (*citing* Ex. 1003 ¶102 (Appx0658-0659) alone and with other declaration paragraphs).

Masimo explained there was no support cited for the proposition that Webster and Melby dealt with "similar systems and methods," and that Webster and Melby involve completely different systems and methods with different goals. Br. 35-36. Webster and Melby may very well be non-analogous art. But, regardless, Apple's expert's conclusory and unsupported declaration cannot support obviousness and the Board was wrong to rely on it. *See In re Magnum Oil Tools Int'l, Ltd*., 829 F.3d 1364, 1380 (Fed. Cir. 2016) ("conclusory statements cannot satisfy the petitioner's burden of demonstrating obviousness").

Apple also defends a different factual finding than what the Board made. Apple asserts that "the Board found as a factual matter…that Melby solves the problem of reducing ***unwanted light***, which is the same problem Webster identifies." Resp. 42-43 (citing Appx0030, Appx0032-0033). But, as discussed, the Board's

finding was actually that "***ambient light***" "is the type of light the light control film of Melby is designed to minimize."  Appx0029-0030; *see also* Appx0032 ("Melby teaches a louvered plastic film that collimates light and reduces the influence of ***ambient light***."); Appx0033 ("reduc[ing] excessive ***ambient light***…happens to be one of the goals of Melby").  The Board repeatedly used that unsupported finding to attempt to link Webster and Melby in its erroneous analysis.  *See, e.g.,* Appx0029-0030; Appx0032; Appx0033.  The "unwanted light" in Webster ("ambient light" reaching the pulse oximeter's detector) is a completely different issue than the "unwanted light" in Melby (light emitted from a back-lit display that is reflected within the louvered film resulting in ghost images).

Apple also criticizes what it asserts was "Masimo's surgical approach to Dr. Anthony's declaration."  Resp. 43.  Apple then cites many other declaration paragraphs.  *See id*. (citing Appx0653-0657 (¶¶92-100)).  But Masimo's argument addressed the Board's decision, and the evidence that the Board relied on.  *See* Br. 34 (discussing the Board's findings at Appx0030, which cites Ex. 1003 ¶¶ 96, 99, 100, 101–103 (Appx0655-0659)).  Regardless, Apple does not explain how the other identified declaration paragraphs, not cited by the Board, cure the deficiencies in the Board's findings.  Resp. 43-44.  Nor does Apple explain how the "declaration, read holistically," (Resp. 43) provides substantial evidence.

Apple cites *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1376 (Fed. Cir. 2020) as suggesting that expert testimony could constitute substantial evidence of a motivation to combine references.  Resp. 43-44.  But *Acoustic* undermines Apple's "holistic" approach by emphasizing that it is the specific parts of the declaration cited by the Board that must provide support. *Acoustic,* 949 F.3d at 1376.  Moreover, *Acoustic* recognizes that "conclusory statements that skilled artisan *could* combine the references" are deficient.  *Id*. at 1375.  As Masimo pointed out, much of the cited testimony by Apple's expert ***is*** conclusory and ***does*** rely on "statements that skilled artisan *could* combine the references."  Br. 34-38.

Indeed, the Board relied on a paragraph of Apple's expert's declaration that proposed a simple substitution theory of obviousness based on features not found in either Webster or Melby.  *Id*. 35-36.  Apple now, for the first time on appeal, admits declaration paragraph 102 was a "drafting error."  Resp. 44 n.9.  Apple urges any error by the Board in relying on paragraph 102 was "harmless" because "the Board did not reproduce" the error "in the ***analysis*** portion of its decision."  *Id*.  The Board's decision, however, expressly discussed paragraph 102's "simple substitution" theory without recognizing or commenting on any error.  Appx0023-0024.  And the Board repeatedly cited that erroneous paragraph 102 in support of its analysis.  Appx0030-0031.  That the Board's decision reproduced the declaration's

facially incorrect paragraph without comment (Appx0023-0024) and repeatedly relied on the erroneous paragraph in its analysis (Appx0030-0031) underscores the deficiencies in the Board's approach.

Masimo's opening brief also explained that an artisan would have understood that Melby's louvered structure substantially decreases the light passing through it, even the desirable "on-axis" light. Br. 36-37. Unlike the Board's repeated reliance on unsupported expert testimony that conflicts with the cited art, Masimo's expert's testimony reflects Melby's disclosure. *See* Appx0818 4:41-47 (noting "clear regions make up about 86 percent of the film"); Appx1502-1503 ¶106 ("in Melby, even if the light was approaching from the appropriate direction, e.g., from directly above the film, the louvers 14 would limit some portion of the light coming from that direction"). Apple suggests the Board "acknowledged but never accepted" Masimo's position. Resp. 44. Apple also suggests that "even if the Board had accepted" that a louvered film substantially reduces the desirable on-axis signal—as Melby expressly states—it would amount to weighing simultaneous advantages and disadvantages. *Id*. But the alleged advantages are based on the Board's unsupported finding that Melby's louvered film was "designed to minimize" ambient light. In contrast, the disadvantage of a reduced signal of interest is expressly discussed in Melby. *See* Appx0818 4:49-52 ("the preferred construction will be determined by

the acceptable amount of ghosting, the minimum acceptable on-axis transmission and acceptable difficulty of construction").

### 2. **The Board's findings regarding Webster are unsupported by substantial evidence**

#### a. **Webster only discusses wavelength filters above a pulse oximeter's detector**

The Board's finding that Webster teaches or suggests films other than wavelength filters is unsupported by substantial evidence. Br. 38-41. As Masimo explained, the Board focused on five words—"some type of light filter"—in isolation and ignored Webster's surrounding disclosure, even the disclosure found in the next sentence. *Id*. When read as a whole, Webster is clear that its discussion of filters used in pulse oximeters is solely about wavelength filters. *Id*.

Apple argues that the Board "made a factual determination, as it was free to do." Resp. 45. Apple suggests that "Masimo essentially argues that Webster's subsequent description of wavelength filters implicitly limits the broad and unambiguously non-limited characterization of light filters that the Board found compelling." *Id*. 46. Once again Apple misunderstands Masimo's argument. As Masimo explained, Webster *expressly* indicates that it is only discussing wavelength filters. When Webster refers to "some type of light filter over the detector," it immediately clarified "*[t]his* allows light of *wavelengths* of interest to pass through the filter but does not allow light of other *wavelengths* to pass through the filter."

Appx0950.  Webster subsequently elaborates on "[o]ptical filtering" in a separate section.  That separate section likewise only discusses wavelength filters. Appx0950.  Apple argues that Webster includes an "unrestricted disclosure of a light filter to help with unwanted light," Resp. 46, but that argument requires reading a handful of words in isolation and ignoring the rest of the reference.  This is not a situation where Webster has two different reasonable interpretations.

Apple suggests Webster's statement that "[a] number of optical filter types can be used" is a broad disclosure.  *Id*. 47.  Once again, Apple ignores the surrounding sentences.  The sentence immediately before indicates that optical filtering "is used to limit the spectral response of the photodiode."  Appx0950.  A "spectral response" refers to the sensitivity of a detector to different wavelengths of light.  The sentence immediately after Apple's cited statement discusses a specific wavelength filter ("a red Kodak No. 29 wratten gel filter").  *Id*.  There is no ambiguity in Webster's disclosure:  the only type of optical filtering disclosed is a wavelength filter that limits the photodiode's spectral response.  *Id*.

Apple also argues that Webster's statement that "these external filters do not appear to be used much in actual pulse oximetry designs" is ambiguous and that "the Board was free to resolve that ambiguity as it did to help reach its conclusion that Webster does not limit its teachings to wavelength filters."  Resp. 47-48.  Masimo agrees with the Board that Webster discourages gel film wavelength filters above a

pulse oximeter's detector.  Br. 40; Appx0032-0033.  But the Board wrongly found that Webster's criticism confirms "some type of light filter" is a broad disclosure. Appx0032-0033.  Criticism of wavelength filters, the sole type of filter discussed in Webster, does not evidence a preference for some other undisclosed type of filter. If Webster contemplated some *other* type of light filter beyond a wavelength filter, it would have said so.  Webster, "a comprehensive summary of the state of the art," Appx0012, discusses no type of light filter other than wavelength filters.   And Webster notes that even wavelength filters "do not appear to be used much in actual pulse oximetry designs."  Appx0950.

Apple also cites its expert's declaration.  Resp. 48 (*citing* Appx0654-0655 ¶¶94-96).  But the declaration admits that "[u]sing a light filter allows 'light of wavelengths of interest to pass through the filter but does not allow light of other wavelengths to pass through the filter.'"  Appx0654 ¶94.  The cited declaration testimony does not opine that "some type of light filter" means anything other than a wavelength filter.  Appx0654-0655 ¶¶94-96.  The Board's finding "that Webster teaches that in one embodiment light filters, such as those found in Melby, could be used above the detectors," Appx0032, is unsupported by substantial evidence.

### b.  <u>Webster does not teach a filter that blocks ambient light</u>

Masimo's opening brief explains that the Board improperly conflated different teachings from different sections of Webster.  Br. 42-46.  Webster discusses

optical filtering in one section (heading 6.3.1). Appx0950. Webster explains that optical filtering "is used to limit the spectral response of the photodiode." Appx0950. This section discusses no structures directly over the detector physically blocking light to the detector.

Webster also discusses physically blocking light in a different section (heading 6.3.2) entitled "[o]ptical interference." Appx0950. This different section discusses ambient light and identifies as a possible solution "decreas[ing] the angle of incidence to the photodiode." *Id*. As illustrated in Webster Figure 6.6 (below), Webster decreases the angle of incidence using barriers to the side of a photodiode but leaves an unimpeded path above the photodiode. Appx0951; Br. 42-45.



Apple argues that Webster discloses "multiple alternative[] means for achieving certain goals, such as limiting the impact of ambient light." Resp. 50; *see generally* Resp. 49-51. Apple then asserts the "additional measures" disclosed in Webster's "Optical interference" section would not dissuade an artisan from combining Webster and Melby. Resp. 51. But neither Webster nor Melby suggests

physically blocking light above a detector. Notably, the pulse oximeter presses against skin during use and measures light coming from a measurement site over the detector. *See* Appx0958 ("The photodiode should be placed as close as possible to the skin without exerting force on the tissue."); *id*. Fig. 7.1 (schematic illustration). Webster illustrates a physical barrier to the side of the detector that blocks light entering from the detector's side. Appx0951. Light from the detector's side does not come from the measurement site. In contrast, a louvered film above the detector blocks a substantial amount of the desirable on-axis light from the measurement site. *See* Appx0818 4:41-47; Appx1497-1503 ¶¶94-97, 103-107; *see also* Appx1932 (louvered film has only ~75% on-axis transmission).

The Board found that "[t]he proposed combination recognizes that although the LEDs are transmitting light through the finger and toward the photodiode not all of the light from the LEDs is actually to go through that finger and light that has not gone through the finger would then be a source of noise." Appx0031. During use, with the detector pressed against the skin, "light from the LEDs…that has not gone through the finger" must come from the side. Thus, Webster discloses barriers to the side of the detector, not above the detector. Appx0950-0951. Where "each device independently operates effectively, a person having ordinary skill in the art, who was merely seeking to create a better device … would have no reason to combine the features of both devices into a single device." *Kinetic Concepts, Inc. v.*

*Smith & Nephew, Inc.*, 688 F.3d 1342, 1369 (Fed. Cir. 2012). Neither Webster nor Melby identifies any reason why a POSITA would depart from Webster's existing solutions and instead implement a louvered structure over the detector that blocks a substantial amount of the desired on axis light from the measurement site.

> ### c.    The Board's finding that Webster and Melby teach the same goals, and work in precisely the same manner to achieve precisely the same end is unsupported by substantial evidence

Finally, the Board found that Webster "recognizes additional measures that would reduce excessive ambient light, such as decreasing the angle of incidence of light to the photodiode…which also happens to be one of the goals of Melby." Appx0033. Once again, the Board's finding relies on its erroneous understanding that "one of the goals of Melby" is "reduc[ing] excessive ambient light." *Id*. As discussed, Melby does not use its louvered structure to reduce ambient light, does not disclose a photodiode, and instead uses its film to reduce ghost images produced by light emitted from large displays. Appx0814 (Abstract, Title); Appx0817 2:30-55; Appx0818 4:41-52; Appx0819 5:37-40; Br. 47-48.

Apple defends the Board's decision by arguing "there is substantial evidence to support the Board's finding that Melby's film reduces ambient light." Resp. 53. But Apple ignores the Board's actual finding, which is that "reduc[ing] excessive ambient light…happens to be one of the goals of Melby." Appx0033. As discussed,

reducing "excessive ambient light" with a louvered structure is not one of Melby's goals.

The Board also erred by finding that "Melby's film would, by reducing the angle of incidence for light of all wavelengths, ***work in precisely the manner*** that Webster contemplates in order to ***achieve precisely the end*** contemplated by each of Melby and Webster." Appx0033 (emphasis added). Melby and Webster each have different goals achieved in different ways. Br. 48-49. Webster physically blocks light coming from the side of the detector. Appx0950-0951. Melby reduces ghost images from light emitted from a large screen. Appx0815 (Fig. 1); Appx0817 2:9-15 ("automobile control panels" or "CRT or other display"); Appx0818 4:42-52 ("ghost image while covering a back-lit display"). Melby does not "work in precisely the manner that Webster contemplates" and does not "achieve precisely the end contemplated by each of Melby and Webster." Appx0033.

Apple asserts that the Board's finding "was the functional manner in which Webster and Melby work, not the precise means they implement." Resp. 54. But Webster and Melby employ different functions to achieve different goals. Webster blocks ambient light using structures surrounding the detector to avoid errant medical measurements. Melby functionally modifies non-ambient light emitted from a screen to avoid creating a ghost image. Apple also defends the Board's finding by arguing that "Webster and Melby concern reducing the angle of incidence

to address ambient light." *Id*. As discussed, no substantial evidence supports finding that Melby "concern[s] reducing the angle of incidence to address ambient light," as Apple argues.

Apple further argues that Webster "never teaches away from using a louvered film to decrease the angle of incidence." *Id*. Irrespective of any teaching away, there is not substantial evidence support for the finding that Melby's louvered structure would "***work in precisely the manner*** that Webster contemplates in order to ***achieve precisely the end*** contemplated by each of Melby and Webster" Appx0033. Finally, Apple asserts that because Melby's film ***could*** be used in Webster's sensor, Webster and Melby ***must*** both achieve the same goal in the same way. Resp. 55. But hindsight recognition that Melby's film could be used in Webster's sensor does not provide substantial evidence support for the Board's finding. Melby does not achieve "precisely" the same end of reducing "optical interference in the form of excessive ambient light" and does not "work in precisely the manner that Webster contemplates." Appx0033.

### 3.   The combination of Webster and Melby does not include a plurality of louvers positioned over the light detector to accept light as claimed

There is no teaching in the references, alone or in combination, of louvers over a detector. Apple does not dispute that Melby's film is used with an emitter, not a detector. Resp. 31-33. Likewise, Apple does not dispute that Webster has no

disclosure of louvers. *Id*. Instead, Apple repeatedly defends the Board's decision by reference to the "combined system." *Id*. 31. But the so called "combined system" is the expert's concocted figure, which illustrates a feature—a louvered structure over a detector, in a physiological sensor—that is not disclosed by the combination of references.

The art itself, improperly combined, at best only teaches a louvered structure over an emitter and has no suggestion of a louvered structure over a detector. Melby attaches the louvered film on a display emitting light, not over a detector receiving incoming light. Appx0817 2:9-45; Appx0818 4:11-52. Melby's louvers reduce ghost images from the light emitted by the back-lit display, which is not ambient light. Appx0817 2:9-45; Appx0818 4:11-52. Webster, in contrast, does not mention louvers at all. Neither Webster nor Melby, individually or in combination, include louvers positioned over a light detector as claimed. Appx0814-0821 at, *e.g.*, Abstract (ghost-images); 2:9-15 ("automobile control panels" or "CRT or other display"); Appx0950-0951. Nor does either reference teach a structure over a detector that receives light passing through a measurement site but blocks light from other angles. Melby's film is on a light emitting screen (Appx0817 2:9-45; Appx0818 4:11-52), and Webster puts no light blocking structure over a detector (Appx0950-0951). At most, the improper combination would yield a louvered film over an emitter.

Apple argues that the combination of Melby and Webster discloses a louvered structure over a detector and cites the Board's finding that "Melby teaches a louvered plastic film that collimates light and reduces the influence of ambient light." Resp. 32 (citing Appx0032). The Board's finding, however, relies on a part of Melby that does not mention ambient light. *See* Appx0032 (*citing* Appx0818 3:63-4:25). Far from reducing ambient light, Melby explains that the actual advantage of its film is "dramatically reduced ghost image while covering a back-lit display." Appx0818 4:42-47. There is no connection between Melby's film, which prevents ghost images from a back-lit display emitting light, and the detector on Webster's pulse oximeter.

Apple also argues that the Board did not use "ordinary creativity" to supply a missing limitation. Resp. 33-35. The Board found "it would have been reasonable for a person of ordinary skill in the art to look to Melby to provide a light control film to help control ambient light and further to place that film over the photodiode detectors of Webster." Appx0030. Apple argues the Board's finding is a motivational statement, not recreation of a claim element. Resp. 34. But no reference teaches a louvered structure over a detector, let alone one where the louvers accept light when the sensor is properly applied to tissue of a patient, as claimed.

The Board's approach is strikingly similar to *DSS*. Like *DSS*, the claims involve complicated technology that is "not 'unusually simple'" or "particularly

straightforward.'" *DSS*, 885 F.3d at 1375. Like *DSS*, the missing limitations play a major role in the claimed subject matter. *Id*. Like *DSS*, the '994 patent recognizes new applications and benefits for a louvered structure above a detector that are found nowhere in the prior art. *Id*. Apple distinguishes *DSS* because it only involved "a single prior art reference and suppl[ied] an absent limitation without support from any other reference's teaching." Resp. 33. But *DSS's* reasoning is not limited to single reference disclosures. *DSS*, 885 F.3d at 1375-77. Instead, *DSS* recognizes that a gap in the prior art's disclosure, whether from one reference or the combination of many, cannot be filled with "ordinary creativity" or "common sense" in a complicated technological field like the one at issue in this appeal. *Id*. at 1375-76. The Board's analysis improperly recreates the crucial element of a louver structure over a detector positioned to accept emitted light transmitted through body tissue "wherein the louvers accept the light when the sensor is properly applied to tissue of a patient" based on an artisan's creativity, not the art's disclosure.

### III. <u>CONCLUSION</u>

The Board repeatedly relied on unsupported factual findings and hindsight reconstruction of the claimed invention. The Board further erred by relying on isolated pieces of the cited art. The Board's legally erroneous approach led to flawed factual findings. For the reasons set forth herein and in Masimo's opening brief, the Board's decision should be reversed and the case remanded.

Respectfully submitted,

Knobbe, Martens, Olson & Bear, LLP

Dated: April 9, 2023            By: /s/ Jeremiah S. Helm
                                    Joseph R. Re, *Principal Counsel*
                                    Stephen C. Jensen
                                    John M. Grover
                                    Shannon Lam
                                    Jeremiah S. Helm

                                    *Attorneys for Appellant*
                                    *Masimo Corporation*

# <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a).  This brief contains 6,938 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.


KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  <u>April 9, 2023</u>            By: <u>*/s/ Jeremiah S. Helm*</u>
                                                Jeremiah S. Helm

                                                *Attorneys for Appellant*
                                                *Masimo Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on April 9, 2023, the foregoing **REPLY BRIEF OF APPELLANT MASIMO CORPORATION** was filed using the Court's CM/ECF system, which will send notice of such filing to all registered CM/ECF users. This Reply Brief was also sent by email to opposing counsel of record on April 7, 2023.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 9, 2023                     /s/  Jeremiah S. Helm
                                         Jeremiah S. Helm

*Attorneys for Appellant*
*Masimo Corporation*

57156760